# CHARLESTON.

## Bryant v. Logan

Submitted June 9, 1904.    Decided November 1, 1904.

| 56 | 141 |
|----|-----|
| e65 | 774 |
| j65 | 777 |

1.   Special Damages—*Injunction.*

     Citizens and tax-payers, simply as such, stating no special' harm to them different from others, cannot enjoin the use of a lease of a part of a city park, made by the city for a term of years for the purpose of racing horses.   (p. 144).

2.   Lease—*Public Park.*

     A lease for the term of one year, with right to extend it five years, by a city, of a part of a public park, to improve it and use it at times for training and running race horses, for a rental to the city, reserving access at times to the public for riding and driving on the track, is not an unlawful diversion of such park from its legitimate use, and the lease is not void. (p. 146).

Appeal from Circuit Court, Wood County.

Bill by G. S. Bryant and others against Thomas Logan and others. Decree for defendants, and plaintiffs appeal.

*Affirmed.*

W. N. Miller, for appellants.

Smith D. Turner, for appellees.

Brannon, Judge:

Bryant and others, suing on behalf of themselves and all other citizens of Parkersburg similarly situated, filed a bill in equity against Logan and others, stating that ▓▓ City of Parkersburg had purchased, with the proceeds of bonds issued by it, 42 acres of land and converted it into a public park having drive ways, walks, a bicycle track, trees and other constituents of a park for public use and enjoyment, and the city had adopted rules for its regulation, and it was under the city's control and management; that by such rules and regulations this park was opened to the public during certain hours, and that for some years it was used by the public as a park for the benefit of all persons; that contrary to law the council had accepted a proposition from the Gentlemen's Driving Club to lease a portion of

the park, about half, to said club for one year, with the right to extend the lease five additional years, for training and racing horses; that this lease was detrimental to the public, because hindering and restricting its public use. Upon demurrer the bill was dismissed, and the plaintiffs appeal.

The first law question is as to the right of the plaintiffs to maintain the bill. They aver no special interest in themselves; they state no injury to their property, no interest peculiar to themselves. The only interest in them presented by the bill is that common to all the people of Parkersburg as citizens and tax-payers. In this respect the case is of practical importance, involving the right of anybody and everybody in a city to invoke equity to frustrate and avoid the action of the council in the management and control of city property. The case is not free from difficulty, both in itself and under diverse authority. A city is a branch, a subordinate agent, of the state government, vested with grave and important powers of state government delegated to it by the state. It is claimed that the use of this park for the purpose contemplated by the lease is misuse and diversion, I may say, a perversion from the proper use, of property paid for by public taxation, and held in trust by the city for public use. Who can question it in the courts? Can a resident and tax-payer, without other interest, do so? On the one hand, it is of high import that the action of constituted authority of government should not be hampered and delayed by assailment by any and every individual from disappointment, whim or caprice. The door would be open wide to multitudinous suits filling the courts with litigation. They would arise constantly to carry out the individual idea of each person, on good and bad grounds. Public policy argues against this. Though bad action of the city authorities would loudly call for redress, better that some instances of it go without redress, and that such redress be left to the public officials. On the other hand, municipal authorities do go wrong sometimes in the exercise of powers committed to them; but we must reflect that the people have entrusted them with discretion and power, and that it would produce infinite confusion, if it should lie in everybody's will, in every instance, to act on his own impulse to question the public action of municipal authority. Unlawful action should be redressed; but who can call for it? The attorney-general representing the state's abused confi-

dence, at the relation of a resident, can call upon the courts to
arrest or nullify such unwarranted action. 2 Dillon, Munic.
Corp. section 912. "Where the injury which it is sought to en-
join is of a public nature, relief is sometimes sought by an ac-
tion in the name of the attorney-general. And where under an
act of parliament lands are directed to be placed and kept in
proper condition for the purposes of public recreation, the muni-
cipal authorities having charge of such lands may be enjoined
from diverting them to another and different use without au-
thority of law, upon an information filed by the attorney-gener-
al." 2 High. Injunc. section 1303. If the lease is beyond the
council power, the occupation of the park under it is a public
nuisance, because it obstructs the public use, just as the ob-
struction of a highway is a public nuisance. So viewing it, the
authorities are clear that no one interested only as all others are,
not personally affected in property or otherwise, can have an in-
junction. 2 High on Inj section 839; *Mississippi* v. *Ward,* 2
Black 485; *Talbott* v. *King,* 32 W. Va. 6.

In *State* v. *Matthews,* 44 W. Va. 372, we decided that where
one usurped the office of sheriff, in which all are interested, his
right must be contested by somebody interested further than as
a citizen or taxpayer, unless the attorney-general intervened. I
do not see why the case of *Smith* v. *Cornelius,* 41 W. Va. 59, is
not pointed authority in this case. The Berkeley Springs prop-
erty was in the custody of a public corporation created by the
State to hold it in trust for public health and pleasure, and this
Court held that a lease by such corporation, though *ultra vires,*
could not be contested by a private person, but only by the state.
In *Gall* v. *Cincinnati,* 18 Ohio St. 563, it was held that tax-
payers as such could not oppose the removal of a market house.
The court said that whatever rights adjacent lot owners might
have, tax-payers, as such, could not, by injunction, prevent it.
When private persons sought to challenge the action of the
county court in changing the location of a bridge, JUDGE LUCAS
said: "They stand here simply as private citizens and tax-pay-
ers, who undertake to represent the whole county in opposition to
the judgment and action of the properly constituted authorities."
He further said that they stood simply as citizens honestly be-
lieving that the decision and judgment of the tribunal appointed
by law to determine such questions were at fault, and seeking to

substitute their own judgment for that of the legal authorities,. and coerce them to abandon their own views and accept the views of those citizens. *County Court* v. *Boreman,* 34 W. Va. p.. 93. In the fully considered case of *Supervisors* v. *Gorrell,* 20· Grat. 484, where the supervisors were selling an old court house lot and acquiring a new one, certain citizens and tax-payers asked to be made parties. The opinions of the county judge ˎand of the supreme court both deny their right as citizens or tax-payers· to intervene, because without personal interest.˙ In the county judge's opinion several cases are cited, one holding that "a plain- tiff cannot sue as one of the public" to restrain a company from closing a railroad. The same principle is stated in *County Court* v. *Armstrong;* 34 W. Va. p. 329, the syllabus holding that "citi- zens and tax-payers, merely as such, having no special property or interest to be affected save in common with all other citizens· and tax-payers, cannot become parties to a proceeding by a coun- ty court to alter the location of, and rebuild, a county bridge." In 2 Dillon, Munic. Corp. ch. 22, much is said in behalf of the right of tax-payers to enjoin illegal municipal action; but it will be found that the argument is in favor of such right in cases· where a bonded debt is being incurred, or taxes illegally levied, or public money misapplied. I do not question the right in such cases, though many cases go so far as to deny it even there. In such cases tax-payers have a very perceptible, real interest; money is being taken from their pockets. But that does not apply in this case, the mere control and management of a city park where it is being leased for a short term for rental beneficial to the city. High on Inj. section 1301, says: "Although the general doctrine that tax-payers are proper parties to invoke equitable relief against misconduct on the part of municipal authorities, is thus seen to be well established, it is not to be un- derstood that they are entitled to maintain action in all cases of this nature, regardless of their personalˎ interest or.the degree of injury which they may sustain." The Ohio case of the market house above cited, *Gall* v. *Cincinnati,* is cited by High as also· the New ˑYork case of *Tift* v. *City,* 65 Barb. 460, holding that "A tax-payer at large of a municipality having no private inter- est in the question, more than other tax-payers, cannot maintain an action in equity as against the public authorities, to set aside or prevent acts claimed to be illegal." The city was selling a

park. The same doctrine is found in *Ayers* v. *Lawrence,* 63. Barb. 454. Blackstone is there quoted as stating: "It would be unreasonable to multiply suits by giving every man a separate right of action for what damnifies him in common only with the rest of his fellow citizens." In *Roosevelt* v. *Draper,* 23 N. Y. (9 Smith) 318, right was denied to an inhabitant and tax-payer to contest a sale by the city of a piece of land in the city. The matter has been often considered and so held in New York. It has even been held that inhabitants and tax-payers cannot enjoin the vacation of a street, unless peculiarly injured differently from others. *City* v. *Union,* 102 Ill. 379; *Hessing* v. *Scott,* 107 Ill. 470. So we hold that the plaintiffs cannot sue. Suppose the Board of Public Works to sell furniture in the capitol, or suppose the directors of any state institution to do so, or misapply public property. Can we think that private individuals could have an injunction? I should say not, without an act of Legislature to enable them to do so.

But if the plaintiffs could sue, they cannot on the merits succeed. Chapter 32, Acts 1893, amending the charter of Parkersburg, empowers the city to "purchase, take, receive, hold and use goods and chattels, land and tenements * * either for the proper use of said city; * * and the same may grant, sell, convey, transfer, *let* and assign, pledge, mortgage, charge or encumber in any case and in any manner in which it would be lawful for a private person so to do, subject to the limitation and provisions of the constitiution." Here is a very broad power given by the Legislature to the city. I do not see why it does not legitimate the lease made by the city from the imputation of excess of power and voidness.

Again: Even if the power to make the lease in question had not been given by the act of the Legislature, still we would not brand it as void and illegal, because the use contemplated by the lease is not an unlawful diversion of a part of the park from the use in view in its acquisition. The bill says the ground was acquired for park purposes "for the health, pleasure and comfort of the people." Racing horses is enjoyed by thousands and thousands of people, high and low, rich and poor. The use of the park for this purpose would give people recreation and pleasure, and is not foreign to the object for which it was purchased. N. *Orleans* v. *Louisiana Co.,* 140 U. S. 654. Note, too, that there

was no sale depriving the city of title; but only a lease for one year, with right to extend the term five years. The lease covered only half of the forty-two acres. There were already a grand stand and race track. The lease gave exclusive control to the club of the part leased, reserving to the public access to the track for riding or driving with horses or vehicles, except on racing days and one week previoius or when the track was in actual use by the club, or when its use would be improper by reason of bad weather. So it did not exclude the public wholly, but still allowed a partial use of it by the public. The lease gave the city $300 annual rental, and fertilizers accumulated in the stables for the other ground. The city derived a benefit from the lease. A city may lease a part of a lot conveyed for court house purposes. It was held not a diversion from the legitimate use. *Bolling* v. *Petersburg,* 8 Leigh 224. Parts of public buildings not needed may be leased. Note 8, 20 Am. & Eng. Ency. L. (2d Ed.) 1187.

Therefore, we affirm the decree.

*Affirmed.*