D. M. McVean, *etc. v.* The City of Elkins *et al.*

(No. 9604)

Submitted September 26, 1944. Decided November 21, 1944.

*Arnold & Crawford, D. H. Hill Arnold,* and *E. A. Bowers,* for appellants.

*E. L. Maxwell,* for appellee.

ROSE, PRESIDENT:

By deed dated September 15, 1893, Senator Henry G. Davis and Kate A. Davis, his wife, conveyed to the City of Elkins, a municipal corporation, a parcel of land referred to as "containing about 9 acres, and being the parcel of land called the Park."

The consideration set out in the deed is "the sum of one dollar in hand paid, and the other considerations hereinafter mentioned and particularly specified to be observed and kept on the part of the said party (City of Elkins) of the second part." It is agreed, however, that the conveyance was a donation, no consideration, in fact, having been paid.

The granting clause in the deed also recites that the conveyance was made "for the purpose hereinafter specified", and a subsequent paragraph in the deed states these purposes as follows:

"It is expressly agreed between the parties hereto that the parcel of land is conveyed to the said City of Elkins for the sole purpose of a public park, and the acceptance of this deed on the part of the said City of Elkins shall be taken and held as a covenant on its part that the said parcel of land shall be kept and used exclusively for said purpose and no other, and that the said City of Elkins shall keep said park at all times fenced and in reasonably good condition by preventing the destruction of and injury to any of the trees and shrubbery growing therein except it shall be necessary to trim or cut any of them for the purpose of improving the general appearance of the grounds and the comfort of those using the same for purpose aforesaid * * * and that no buildings, platforms or other constructions other than are usual and necessary in City parks shall be permitted to be erected at any time hereafter which will destroy or any way impair the trees or shrubbery now or hereafter growing in said park; and it is further agreed between the said parties hereto that a failure on the part of the said City of Elkins to comply with the said covenants or specifications as to the use and taking care of the said grounds for the purpose aforesaid, shall work and operate a forfeiture of all right and title to the land hereby conveyed, and that the same shall revert to the parties of the first part their heirs or assigns and any of them shall in the event of the reversion aforesaid have the right to re-enter and absolute possession of the said tract or parcel of land."

On September 2, 1943, the council of the City of Elkins adopted a resolution providing "that the Park Committee be authorized to cut trees in the City Park, in the northwest corner, to make a play ground for children". This resolution was adopted without previous notice to the citizens or to the public; and on the 3d or 4th day of September, 1943, the park committee proceeded to clear this ground as authorized by the resolution.

On the 16th day of September, 1943, certain citizens of the city appeared before the council and protested against the cutting of trees in the park for the purpose of the construction of a playground; whereupon a committee was

appointed by the city council to confer with the "civic organizations" of the city in regard to the proposed construction of the playground, and further work was suspended for the time being. On the 21st day of October, 1943, other groups of citizens appeared before the council, expressed favorable opinions, and encouraged the council to proceed with the plans for the playground. Thereupon a resolution was adopted, as follows: "That Council approve the recommendation of the Park and Recreation Committee that the City proceed with the playground project in the City Park, the completion of the project not to involve the clearing of additional acreage but to involve the transplanting of trees and shrubs to a line on the eastern side of the alley, and the installation of necessary recreation equipment."

On the 2d day of November, 1943, this suit was instituted in the Circuit Court of Randolph County by the plaintiff, suing on behalf of himself and of other citizens and taxpayers of the City of Elkins, against the city, as a municipal corporation, and its mayor and councilmen. The bill of complaint narrated, substantially, the facts above set out, and charged that the acts already done, and those contemplated by the last resolution of the council, constituted a violation of the covenants in the deed under which the city held title to the park, and unlawfully diverted its use; that the work done, and intended to be done, would work a forfeiture of the city's title to the park land, and that certain of the heirs of the said Henry G. Davis and Kate A. Davis had already protested to the city and its council against this action as being a violation of the covenants in said deed; that, if the project is carried out, the title of the city to said park will be forfeited, or, at least, jeopardized; and, further, the alteration so proposed to be made in the park was a special injury to the plaintiff's residence property, situated directly across the street therefrom, by depreciating the value thereof, and its desirability as a residence.

The prayer of the bill is that the defendants be enjoined from destroying, removing or injuring any of the trees and

shrubbery now growing in said park, and from violating the conditions and covenants contained in the Davis deed.

The defendants filed a demurrer, the substantial grounds stated in which are that the relief sought by the plaintiff could only be claimed by the heirs or devisees of the grantor, Henry G. Davis; that the provisions of the deed, claimed to have been violated, are conditions subsequent to the vesting of the title thereto and that equity will not enforce such forfeiture; that the bill fails to show that the things complained of constitute a violation of any of the covenants of said deed; and that the things proposed to be done by the council are within the governmental functions of the city and are but the exercise of its judgment and discretion in relation thereto and not controllable by the court at the instance of a taxpayer.

An answer was also filed by the defendants, which, in effect, reiterates the legal propositions contained in their demurrer, and alleges that the construction and operation of the proposed playground for children is highly desirable and necessary, their being no other suitable or convenient site for such playground available; that the things sought to be restrained have already been done, and that the further work contemplated will not involve any interference with the trees or shrubbery in said park, except the removal and transplanting of certain shrubbery or small trees therein.

Evidence was taken by both the plaintiff and the defendants, from which it appears that the ground proposed to be used for the playground is the most convenient and suitable which is available for that purpose, and that such a playground is highly desirable, if not necessary, not only for the amusement and entertainment of the youth of the city, but as a preventive of delinquency among them. But it also clearly appears from the evidence that, from the beginning, provisions have been made in said park, involving no removal of trees, for the play of small children by the use of swings, teter-tots, sand boxes, slides and other similar equipment; and that a pavilion, used for public speaking and band concerts, has, for many years,

been maintained therein. It is also shown that prior to the removal of the trees older children used the park for playing the games of softball, volley ball and basketball. The necessity for the clearing of the trees on the proposed playground arises from its contemplated use of engaging in these latter games with greater and more improved facility. Heretofore such diversion for these youths had been possible on vacant lands, which, for the present, are being utilized by cadets or war trainees. Other practicable, though less desirable, sites for such playgrounds may be secured at a distance from one to one and one-half miles from the section of the city which is to be particularly served by the new playground. But it does not appear how any great or serious hardship or inconvenience would be cast upon these young people, who are to use the proposed playground for fairly strenuous games, by their being required to walk a distance of a mile or a mile and a half to the other available sites.

The evidence shows, if any evidence be necessary for that purpose, that the proposed playground is highly desirable, but wholly fails to demonstrate, even approximately, that the use of this particular site is indispensable for that purpose. But however desirable, or even necessary, such a playground may be, that fact, though clearly established or admitted, casts no light upon the proper construction of the Davis deed, and does not, in any way, affect the rights or duties of the City of Elkins thereunder. The fundamental question in issue is a purely legal one as to whether the things done, and proposed to be done, by the city are within the permissive use of the park lands under the terms, conditions, restrictions, and covenants contained in the deed under which the City of Elkins holds title thereto.

A court of equity will not interfere by injunction to control public officers or boards in the exercise of their governmental functions. *County Court of Mingo County* v. *Bailey,* 97 W. Va. 351, 125 S. E. 253; *Belington & N. R. Co.* v. *Town of Alston,* 54 W. Va. 597, 46 S. E. 612.

But, in maintaining and operating a public park a mu-

nicipality acts in its proprietary, not its governmental capacity. *Ashworth* v. *City of Clarksburg*, 118 W. Va. 476, 190 S. E. 763; *Warden* v. *City of Grafton*, 99 W. Va. 249, 128 S. E. 375. A variation of the same principle is that public officers, and governing bodies, acting within their jurisdiction will not be controlled by injunction. *Board of Education of Black Fork District* v. *Holt*, 51 W. Va. 435, 41 S. E. 337; *Spedden* v. *Board of Education*, 74 W. Va. 181, 81 S. E. 724; *Downs* v. *Lazzelle*, 102 W. Va. 663, 136 S. E. 195. But the jurisdiction of the council is fixed by the city's title deed, and the charge here is that this jurisdiction is being exceeded. By accepting a gift of land for specific purposes, a municipality is bound to use it for these purposes and no other. *Slavich* v. *Hamilton*, 201 Cal. 299, 257 P. 60; *McPike* v. *Illinois Terminal Ry. Co.*, 305 Ill. 298, 137 N. E. 235; *Miller* v. *City of Columbia*, 138 S. C. 343, 136 S. E. 484; *City of Ft. Worth* v. *Burnett*, 131 Tex. 190, 191, 114 S. W. 2d 220; *Hill* v. *Borough of Belmar*, 3 N. J. M. 254, 127 A. 789; *Carstens* v. *City of Wood River*, 332 Ill. 400, 163 N. E. 816. "Where a donation or dedication of a tract of land is made to a municipal corporation solely for a public park, the municipality cannot use it for purposes inconsistent with the purposes of such grant." 3 McQuillin on Municipal Corporations, 2d. Ed., section 1257.

Were there no restrictions in its title papers as to the character of park to be maintained by the city, the playground proposed to be constructed would be well within the discretion of its proper officials. *Commonwealth* v. *Beaver Borough*, 171 Pa. St. 542, 33 A. 112; *Sutcliffe Co.* v. *City of Louisville*, 205 Ky. 718, 266 S. W. 375; *Wichita* v. *Clapp*, 125 Kan. 100, 263 P. 12; *Spinks* v. *Los Angeles*, 220 Cal. 366, 31 P. (2d) 193; *Seattle Land & Improvement Co.* v. *Seattle*, 37 Wash. 274, 79 P. 780; *Stevens Hotel Co.* v. *Art Institute*, 342 Ill. 180, 173 N. E. 761; *Anderson* v. *Thomas*, 166 La. 512, 117 So. 573. But there are such limitations and restrictions in the city's deed, and, the land having been accepted from a private donor, these restrictions must be strictly construed against the city. *Slavich* v. *Hamilton, supra; City of Shreveport* v. *Kahn*, 194 La. 55,

193 So. 461; *City of Fort Worth* v. *Burnett, supra; Bradley* v. *Crane,* 201 N. Y. 14, 94 N. E. 359.

It is perfectly clear that the donation of the park site was made for specific and limited purpose only. The first sentence in the deed states that the land is conveyed "for the purpose hereinafter specified". That purpose is stated to be "for the sole purpose of a public park * * *". The deed expressly provides that "the acceptance of. this deed on the part of the said City of Elkins shall be taken and held as a covenant on its part that the said parcel of land shall be kept and used exclusively for said purpose and no other". The character of park to be maintained is indicated with equal clearness. The land, at the time of its conveyance, was wholly covered with native trees and shrubs. The deed required the City of Elkins to keep the park at all times fenced and in reasonably good condition "by preventing the destruction of and injury to any of the trees and shrubbery growing therein". No cutting of trees or shrubbery was to be permitted except for the purpose of improving the general appearance of the grounds and the comfort of those using the same for the purpose of the grant. For fifty years the city, evidently recognizing the validity of these restrictions on the legitimate use of the park property, has preserved it in its pristine forested condition throughout. When it was desired to use fifteen feet along one side of the park for widening a street, a deed for that purpose was sought and obtained from the heirs of the grantors.

No witness says, and of course no witness can say, that the building of a playground on the park grounds would improve its appearance; nor does any party or witness claim that the proposed destruction or removal of the trees was intended for that purpose. Even if, as some witnesses say, the trees were defective, they were not cut, and are not proposed to be removed, for the purpose of improving the appearance of the grounds, but for the purpose of clearing an area for a playground. A second justification of the trimming or cutting of the trees or shrubbery is "the comfort of those using the same for purpose

aforesaid". But the "comfort" to be attained is that of those using the grounds for the purpose of a public park, and not merely that of those using a section of the park for a wholly different purpose. Is it to be supposed that the users of the park for its original and normal purpose would have their comfort enhanced by the games to be carried on by the users of the playground?

The language of his deed leaves no doubt that Senator Davis donated this land to the City of Elkins to be preserved in its natural beauty as an area of trees and shrubs, to be enjoyed aesthetically, and to be a place of resort for such pleasures and delights as such a park would afford in the way of rest, shade, entertainment, and recreation consistent with its maintenance in the character required by the terms of the deed. Such a purpose and use are in strict conformity with the primary meaning of the words "public park".

Other courts have had to consider alleged diversions of lands donated to municipalities for a limited character of park. In *Beth Israel Hospital Association* v. *Moses,* 275 N. Y. 209, 9 N. E. (2d) 838, it was held that a municipality which had accepted a deed containing a covenant that the land conveyed must be used as an ornamental square, could not thereafter install playgrounds thereon. In *City of Fort Worth* v. *Burnett, supra,* the court held that a public library building could not be maintained on land granted to a city "for the purpose of creating a park and place of recreation", and on condition that the city maintain the land "as a public park and breathing place" and "as a resting spot for tired mothers and their children"; and that it should not be used "for any other purpose than as a public park and meeting place". In *Carstens* v. *City of Wood River, supra,* it was decided that no part of land granted to a municipality and accepted by it "for park purposes, the same to be maintained as a park for said village", could be used for a swimming pool, recreation center, and pavilion. These cases illustrate the strictness with which limitations on the use of land donated for park purposes are enforced.

These restrictions and limitations as to the character and use of the park adhere to the park as a whole and to every part thereof. It cannot be said that the diversion of approximately one-tenth of its area to a different use and purpose is of no consequence. That one-tenth must be preserved precisely as any other one-tenth. Courts will not concern themselves with the degree and amount of diversion. There must be no diversion of the park, or any of its parts. If one acre can be misused, then why not two acres, or five acres, or all of the land? The restriction is against the "destruction of and injury to any of the trees"—an absolute prohibition. The requirement that the park be maintained in the manner prescribed in the deed applies to the whole, and every part thereof.

The defendants vigorously contend that they are immune to a proceeding, by the plaintiff individually or on behalf of himself and other citizens and taxpayers in his situation, seeking to control them in what they consider their governmental discretion in the management of this park, relying upon the principles announced in *Bryant* v. *Logan*, 56 W. Va. 141, 49 S. E. 21; *Mann* v. *County Court of Mercer County*, 58 W. Va. 651, 52 S. E. 776; *Davis Colliery Co.* v. *Town of Harding*, 83 W. Va. 609, 98 W. Va. 815; *Princeton Power Co.* v. *Calloway*, 99 W. Va. 157, 128 S. E. 89; and *Rudolph* v. *Glendale Improvement Company*, 103 W. Va. 81, 137 S. E. 349, and other cases following these. The principle invoked is announced in *Bryant* v. *Logan, supra*, as follows: "Citizens and tax-payers, simply as such, stating no special harm to them different from others, cannot enjoin the use of a lease of a part of a city park, made by the city for a term of years for the purpose of racing horses". But in this case the plaintiff does clearly plead and prove his special interest in the proper maintenance of the park and his injury by its diversion to another use. He is the owner of a valuable residence immediately across the street from the site of the proposed playground. This property is, of course, enhanced, both in value and desirability as a home, by the maintenance of the park as required by the Davis deed, and is affected,

injuriously to the plaintiff, by the creation of a playground thereon. This Court has sustained the right of a private property owner, specially injured, to prevent, by injunction, such illegal diversion of the use of public land. *Sturmer* v. *County Court of Randolph County,* 42 W. Va. 724, 26 S. E. 532; *Ritter* v. *Couch,* 71 W. Va. 221, 76 S. E. 428. Other courts recognize and vindicate the same right by such a suit. In *Carstens* v. *City of Wood River, supra,* it was held that the owner of land on the opposite side of a street from a public park could maintain a suit to enjoin the city from permitting the operation unlawfully of a swimming pool in the park in front of his property to the depreciation of its value. In *Beth Israel Hospital Association* v. *Moses, supra,* a bill by owners of property, across the streets from a public square, to inhibit the unlawful operation of a playground thereon to their special injury was sustained. In *City of Chicago* v. *Ward,* 169 Ill. 392, 48 N. E. 927, the owner of land was awarded an injunction against misuser of a park situate on the opposite side of a street from his property.

But it is not alone the illegal use of the park that will injure the plaintiff specially. The plaintiff relies for relief also upon the fact that the course contemplated by the city may be, and probably now is, such a breach by it of the covenants contained in the Davis deed as will work a termination completely of the city's title to the park land. A provision in a deed to a municipality granting land for a specific purpose and providing for its reversion to the grantor for abandonment or misuser will be sustained. *East Chicago Co.* v. *City of East Chicago,* 171 Ind. 654, 87 N. E. 17; *Porter* v. *International Bridge Co.,* 200 N. Y. 234, 93 N. E. 716; *Plumer* v. *Johnston,* 63 Mich. 165, 29 N. W. 687; *Carpenter* v. *Graber,* 66 Tex. 465, 1 S. W. 178. "A grantor, in conveying real property to a municipal corporation for a specific public purpose, may, by the use of apt terms, subject the title to forfeiture for breach of a condition expressed in the deed; and upon the failure of the municipality to comply with the condition, the title will revert to the grantor, as in the case of a similar grant to an

individual." 3 Dillon on Municipal Corporations, 5th Ed., section 979. And it appears from the evidence that Senator Davis Elkins, a grandson of the grantors, who is a co-executor of the will of Henry G. Davis, has protested against the proposed use of the park for a playground and has directed a suit to be brought for the purpose of enjoining such diversion, which purpose was abandoned upon the institution of the present suit. The jeopardy of the city's title to the park, therefore, is indicated by substantial evidence. Whether the things already done by the city constitute such a breach of its covenants as to forfeit its title cannot, of course, be determined in this suit, to which those who might claim the right to forfeiture are not parties. But, if the acts already done are not sufficient for that purpose, it may still be that the further destruction or removal of trees and shrubbery and the completion of the playground, and its maintenance as such, will be such an aggravation of the breach as to accomplish that result. On the other hand, it is possible that if the city now desists, either voluntarily or under coercion, a forfeiture may be averted.

Can a private citizen and taxpayer enjoin the city officials from the doing of unlawful acts by which this property, of a value estimated by witnesses at from $30,000 to $200,000, may be forfeited? In *Dooley* v. *Board of Education,* 80 W. Va. 648, 93 S. E. 766, this Court sustained the right of a taxpayer of a school district to injunctive relief against a board of education's illegal conveyance of school land. If an illegal conveyance of public property may be rectified at the suit of a taxpayer, why not also the unlawful acts of a city council, by which title to such property may be forfeited? But even if this right be questioned, it requires no evidence or argument to demonstrate that the forfeiture of the title of the city and the reversion of the park land to private ownership, may, and in all probability, will, subject the land adjacent to the plaintiff to a use which would depreciate the value of the plaintiff's property. Thus, on this additional ground the plaintiff is entitled to maintain his suit.

Nor can it be said that the injunction sought will be futile at the present stage of the work done and proposed to be done by the defendants, upon the theory that the acts on the part of the city, if illegal, are now, in fact, completed. But the defendants admit that further removal of trees and shrubbery is contemplated and intended. Such a further removal of trees and shrubbery, by denuding the ground, is a violation of the covenant of the city's title deed equally with the original cutting and otherwise destroying of trees; and the continued maintenance and operation of a playground, according to the city's admitted plan, will be a continuous diversion *pro tanto* of the park ground from its permitted use.

We are, therefore, unable to perceive any legal or factual basis for criticism of the decree appealed from, and it is accordingly affirmed.

*Affirmed.*