L. H. BAIER

*v.*

THE CITY OF SAINT ALBANS, *etc., et al.*

(CC 709)

Submitted January 9, 1946. Decided February 5, 1946.

*Dayton, Campbell & Love,* for plaintiff.
*Mohler, Peters & Snyder,* for defendants.
*Ira J. Partlow,* Attorney General, and *James Kay Thomas,* Assistant Attorney General, *Amicus Curiae.*

FOX, JUDGE:

The questions presented in this case are whether the Common Council of the City of Saint Albans may declare a highway toll bridge, erected by it over the Kanawha River between Saint Albans and Sattes, to be free of tolls, and whether solely through action of its common council, it may sell and convey the same to the State Road Commission of West Virginia. The bonds issued by the city to provide funds for the construction of said bridge have been fully paid or provided for, and the said bridge has been designated by the state road commissioner as part of the state highway system.

By Chapter 92, Acts of the Legislature, 1868, the Village of Kanawha City was incorporated, and thereafter by Chapter 186, Acts of the Legislature, 1871 the charter of the Village of Kanawha City was amended, and it was provided that said village should be thereafter made a city corporate and body politic by the name of Saint Albans. Nothing in the charter, or the amend-

ment thereto, throws any light on the questions here in issue. The original charter was limited in its provisions, and provided only for the general powers necessary to conduct the ordinary affairs of the village; and the amendment did nothing more than make a change in the name of the municipality, and add some provisions not here material. However, the Legislature of this State, beginning with the Code of 1868, Chapter 47, Section 1, as amended from time to time, now appearing as Section 2, Article 1, Chapter 8 of the Code, covering municipal corporations, has provided that, "Except as otherwise provided in this Code or by special charter, all municipal corporations in this State are subject to the provisions contained in this chapter and may exercise the powers conferred by this chapter, although such provisions or powers are not imposed or conferred by their charter; and so far as this chapter confers power on a municipal corporation or the authorities thereof, not conferred by the charter thereof, this chapter shall constitute an amendment to said charter * * *." There is a further provision that municipal corporations may adopt any provision contained in the general municipal statute.

By Chapter 85, Acts of the Legislature, First Extraordinary Session, 1933, the city of Saint Albans was authorized, in its corporate capacity, or otherwise, to borrow money from the Reconstruction Finance Corporation, with which to construct as a self-liquidating enterprise or project, a highway toll bridge across the Great Kanawha River from a point within the limits of said city to a point on the opposite side of said river as the proper authorities of the city might select, and general authority was given to the city to construct, own, operate, and maintain such bridge. There is no explicit authority in this statute for the collection of tolls, but designation of the bridge to be constructed as a toll bridge probably authorized the collection of tolls through necessary implication.

There was apparently some doubt as to the constitu-

tionality of this enactment, it being a special act applicable solely to the city of Saint Albans; for, on December 9, 1933, by Chapter 27, Acts of the Legislature, Second Extraordinary Session, 1933, any incorporated city in which, or adjoining which, there is a portion of a navigable or non-navigable river or stream, wholly within the State of West Virginia, or partly within said State and another state or states, or between the State of West Virginia and any other state, including the Ohio River, was authorized and empowered, in its corporate capacity, or otherwise, to construct, maintain and operate a highway toll bridge over and across such river or stream, from such point within the corporate limits of such city, to such point on the opposite side of such river or stream, either within or without said city, as the city, through its proper authorities, might select, and to issue bonds to provide a fund for the construction of a bridge, and to do other relevent acts. Section 5 of this Act provides: "Every municipality or county court issuing bonds, or other evidences of indebtedness, under the provisions of this act, shall thereafter, so long as any such bonds or other evidences of indebtedness remain outstanding, operate and maintain its bridge so as to provide, charge, collect and account for revenues therefrom as will be sufficient to pay all operating costs, provide a depreciation fund, retire the bonds or other evidences of indebtedness, and pay the interest requirements as the same may become due. * * *." What are termed revenue bonds to the amount of $328,000.00 were issued by the city of Saint Albans. Under ordinance, adopted March 1, 1934, as amended on April 2, 1934, the bridge was constructed and the collection of tolls followed. On July 21, 1939, the outstanding bonds had been reduced to $224,000.00, and the same were refunded by a new issue. The statute, under which the city acted, required that it deposit with the State Sinking Fund Commission, thirty days before any bond or the interest thereon became due, a sum sufficient to meet such bond and any interest due on the entire issue. The city kept its en-

gagements in this respect, and has paid such bonds in full, as they have matured and have been presented, and has deposited with the State Sinking Fund Commission a sum sufficient to pay all outstanding bonds and all interest that has or may accrue thereon to the call date thereof.

In this situation the state road commissioner, by an order entered on the 2nd day of November, 1945, designated the bridge aforesaid, and the roads leading thereto, extending from U. S. Route No. 60 in Saint Albans to State Route No. 25 on the opposite side of Kanawha River, as a part of the Kanawha County primary road system. On November 5, 1945, the Common Council of the City of Saint Albans, passed an ordinance which, after reciting the foregoing and making a finding of fact that it would be of substantial benefit to the city of Saint Albans and the public generally, now and in the future, to have a free bridge as a connecting link between the highways referred to in the order of the state road commissioner, adopted the following resolution:

"NOW, THEREFORE, BE IT RESOLVED: That the St. Albans-Nitro Bridge be and it is hereby declared to be free and open to the public, to be used by the public without the payment of any tolls or charges, upon the formal acceptance by The State Road Commission of West Virginia of the maintenance and operation of said bridge, and that the Mayor of The City of Saint Albans be and he is hereby authorized and directed for and on behalf of The City of Saint Albans to make, execute, acknowledge and deliver for record to The State Road Commission of West Virginia an apt and proper deed granting and conveying to The State Road Commission of West Virginia that certain structure known as the St. Albans-Nitro Bridge, PWA Project No. 888, together with all lands, franchises and permits heretofore acquired by The City of Saint Albans and used in connection with said bridge, in consideration of the maintenance and operation of said bridge. by the State Road Commission of West Virginia pursuant to the statutes of the State of West Virginia."

The purpose of this suit is to enjoin the enforcement and execution of the resolution, being the quoted portion of the ordinance aforesaid.

Plaintiff in his bill sets up the foregoing stated facts, which are not in dispute, and avers that the city is the owner of the said bridge, entitled to its control, and to collect tolls, presumably in perpetuity. He avers: "The plaintiff is advised and believes that under and by virtue of the authority contained in Chapter 85 of the Acts of the Legislature of West Virginia, First Extraordinary Session, 1933, and Chapter 27, Acts of the Legislature of West Virginia, Second Extraordinary Session, 1933, The City of Saint Albans has the continuing right to maintain and operate the bridge aforesaid, in a proprietary capacity, and that the continued operation of said bridge by The City of Saint Albans would result in providing a fund which could be expended by the City of Saint Albans in other public improvements or used for the purpose of reducing the ad valorem rate of taxation upon real estate and personal property in said City; that said bridge is a valuable asset now owned by The City of Saint Albans, and that to transfer the same to the State Road Commission of West Virginia would constitute and illegal official act on the part of the defendants, and that such transfer would constitute an illegal, unlawful and extravagant disposal of a valuable asset of The City of Saint Albans, and further would constitute waste and injury to the plaintiff as a taxpayer, and to the other taxpayers, citizens, residents and property owners of the said The City of Saint Albans." It is then alleged, in substance, that unless restrained therefrom said city will abandon the operation of the bridge and surrender to the state road commission the right to operate the same, and that the mayor of the city will deliver a deed of conveyance of said bridge to the state road commission, all of which would result in irreparable injury to plaintiff and all other taxpayers of said city.

The defendants, The City of Saint Albans, and R. F.

Lipscomb, mayor of said city, filed their joint and several answer to the bill. They admit the allegations of paragraphs 1 to 6 thereof; and the allegation contained in paragraph 7 that the average net monthly tolls expected from the operation of the bridge will amount to five thousand dollars, exclusive of the cost of the operation of the bridge, but in their answer aver that expenses other than those for operation, such as repairs, replacements, and insurance had not been given due consideration by the plaintiff. They also deny the allegations of paragraph 8 of the bill, above quoted, and the allegations of paragraph 9, above referred to, which ever irreparable injury to plaintiff and all other taxpayers of the city; and they aver that divers specific benefits would accrue to the city by making the bridge free to public travel, and its transfer to the state road commission.

Plaintiff's demurrer to defendants' answer was overruled, and the following questions, arising on the pleadings, have been certified to this Court:

"1. Whether a municipal corporation may declare a toll bridge owned by it to be free, after all indebtedness against said bridge has been paid.

"2. Whether a municipal corporation, being the owner of a toll bridge, may transfer the same as a free bridge without monetary consideration, to the State Road Commission of West Virginia, after the said State Road Commission of West Virginia has declared said bridge to be a connecting link between two state highways.

"3. Whether the finding of fact of the Common Council of the City of Saint Albans, to the effect that it would be of substantial benefit to The City of Saint Albans and the public generally, now and in the future, to have a free bridge as a connecting link between U. S. Route 60 and W. Va. Route 25, is binding and conclusive on the plaintiff and other taxpayers and residents of the City of Saint Albans.

"4. Whether or not The City of Saint Albans, by virtue of Chapter 85, Acts of the Legislature of

West Virginia, First Extraordinary Session 1933, and Chapter 27, Acts of the Legislature of West Virginia, Second Extraordinary Session 1933, has the continuing right to maintain and operate a toll bridge after the same has been designated as a connecting link between two state highways."

The questions so presented have been considered by the Court on the record as presented, on briefs filed by counsel for the parties, and upon a brief filed, with leave of the Court, by the Attorney General of the State, as *amicus curiae.*

Two preliminary questions, neither of which has been raised by the parties to the suit, nor certified by the circuit court, fairly arise on the record. The first, raised by the attorney general, involves the constitutionality of Chapter 85, Acts of the Legislature, First Extraordinary Session, 1933; and the second bears upon the right of plaintiff to maintain this suit. Ordinarily in a certified case, this Court confines itself to answering the specific questions certified, but these preliminary questions being of interest to the public, and having some bearing, at least, upon the questions certified, we think their discussion at this point both proper and advisable.

We answer the first question by saying that, in our opinion, Chapter 85, Acts of the Legislature, First Extraordinary Session, 1933, is unconstitutional as contravening the provisions of Section 39 of Article VI of the Constitution of this State. No valid reason appears why a general statute should not have been enacted to grant to the city of Saint Albans, and other cities of the State, the power which Chapter 85 aforesaid purports to grant specially to the city of Saint Albans, and this was, in fact, done when Chapter 27 of the Acts of the Legislature, Second Extraordinary Session, 1933, was subsequently enacted. The question is not important, however, as clearly Chapter 27, aforesaid, did all and more than was attempted to be done by Chapter 85; and the question of the right and power of the city of Saint Albans to construct the bridge and operate the same until

the costs have been met by tolls collected therefrom is not here questioned, or in any wise involved.

On the second question, there is grave doubt as to the right of plaintiff to maintain this suit. Two decisions of this Court, never, in our opinion, overruled or departed from, hold that such a suit cannot be maintained by private citizens against a public corporation, where no special or peculiar injury to the plaintiff himself is alleged. *Smith v. Cornelius,* 41 W. Va. 59, 23 S. E. 599, was a case where a board having control, under legislative authority, of Berkeley Springs, a state-owned property, attempted to lease the same for a term of ninety-nine years, and a suit to enjoin such lease was instituted by certain private citizens, who were members of the board having control of said property, and who objected to such lease. The Court held that, "Where a public corporation vested with state property for public use makes a lease of it which is *ultra vires,* a private person can not sustain a suit to contest it; this can be done only by the state or the corporation." *Bryant v. Logan,* 56 W. Va. 141, 49 S. E. 21, was a case where an attempt was made to enjoin a lease of a part of a public park for use in the training and racing of horses, for a rental payable to the municipality, and the Court held that, "Citizens and tax-payers, simply as such, stating no special harm to them different from others, cannot enjoin the use of a lease of a part of a city park, made by the city for a term of years for the purpose of racing horses." The opinions in these cases were written by Judge Brannon, and in each there is logical and lengthy discussion of the grounds upon which this rule was applied. The rule is different in proceedings in prohibition and mandamus. In such cases a private citizen and tax-payer may be a plaintiff. It was so held in *Payne v. Staunton,* 55 W. Va. 202, 46 S. E. 927, and *Pritchard v. DeVan,* 114 W. Va. 509, 172 S. E. 711, as to mandamus. In *St. Marys v. Woods, Judge,* 67 W. Va. 110, 67 S. E. 176, the right to maintain prohibition was held to rest in a city or in persons who were residents and taxpayers thereof. The opinion in the case last cited above was

written by the same Judge who wrote the opinions in the *Smith* and *Bryant* cases. Neither of these cases was mentioned in the *St. Marys* case, and we conclude that it was not intended to change the rule announced in the earlier cases. It was held in both the *Smith* and *Bryant* cases that the power to sue to protect the interest of the public in such cases as those considered therein, rests in the State, city or other agencies in control of the property involved. In the case at bar both the city and the State advocate the theory that the bridge in question should be made free, and transferred to the state road commission; thus we have a situation where those who are opposed to such action have no public authority to which they can appeal for a test of the legality of the action proposed to be taken. Most general rules have their exceptions, and while we are not disposed to question the authority of *Smith v. Cornelius, supra,* and *Bryant v. Logan, supra,* or to depart therefrom as a general rule of law, the actual situation here presented strongly argues in favor of plaintiff's right to maintain his suit, and we hold that he has such right.

The resolution adopted by the Common Council of the City of Saint Albans, on November 5, 1945, and now under attack herein does two things: First, it declares the bridge over the Kanawha River to be a free bridge; and, second, it authorized and empowers the mayor of the city to convey the same to the state road commission, in consideration of the maintenance and operation of said bridge by the state road commission, pursuant to the statutes of the State of West Virginia. We are of the opinion that after the city had collected funds sufficient to pay the outstanding bonds which had been issued to raise funds for the construction of such bridge, and either paid said bonds or deposited a fund for that purpose with the State Sinking Fund Commission the Common Council thereof had the clear right, and was under the duty to declare the bridge free. Inferentially, we so held in *Miller v. Huntington & Ohio Bridge Co.,* 123 W. Va. 320, 342, 15 S. E. 2d 687. The right to collect

tolls rests solely on a grant from the State, and is limited to the powers granted, or necessarily implied therefrom, and cannot arise or exist through any other type of implication. 8 Am. Jur. 976; 11 C. J. S. 1082, 9 C. J. 447. The city was empowered to borrow money and to construct and operate a toll bridge, and required to collect tolls or otherwise provide a fund to liquidate the debt incurred in the construction thereof; but there was no express grant of power to the city to collect tolls after the said bonds had been paid, or provision made for the payment thereof, as required by the Act, nor can such power be implied.

There being no such power granted by the statute under which the city acted, it was without any right whatever to collect tolls after payment of the bonds sold under the statute authorizing the construction of the bridge, and the declaration by the common council of the city that the bridge was free to public travel did nothing more than state a situation which had come into existence by operation of law. Our conclusion on this point is supported by our statutes in reference to toll bridges. Chapter 8, Acts of 1929, provided for a bridge commission and gave it broad powers to purchase and operate toll bridges. By Chapter 1, Acts of the Legislature, Extraordinary Session, 1932, the bridge commission was abolished, and its powers transferred and granted to the state road commission. Section 23 of the Toll Bridge Act, Code, 17-17-23, provides for the ending of tolls and reads as follows: "When the particular bonds issued for any bridge or bridges and the interest thereon shall have been paid, or a sufficient amount shall have been provided for their payment and shall continue to be held for that purpose, tolls for the use of such bridge or bridges shall cease except for the cost of maintaining, repairing and operating such bridge or bridges. Thereafter and as long as the cost of maintaining, repairing and operating such bridge or bridges shall be provided for through means other than tolls, no tolls shall be charged for transit thereover and such bridge or bridges

shall be free." At most, the section quoted provides for tolls for maintenance and repairs and for cost of operation, and this right cannot be exercised when other means are provided to meet the cost of maintenance, repair and operation. That such other means are provided as to any free bridge in a municipality is made clear by Section 26, Article 4, Chapter 40, Acts of the Legislature, First Extraordinary Session, 1933, as amended by Chapter 81, Acts, 1937, which provides: "The state road commissioner shall designate and may, at any time, relocate and redesignate as a connecting part of a primary road, any bridge or street within a municipal corporation. The commissioner shall construct, reconstruct, improve and maintain the designated connecting part at the cost and expense of the state: *Provided, however,* That any existing free bridge forming a connecting link between two counties and two state routes, is hereby adopted as part of the state road system and shall hereafter be maintained by the state: *Provided further,* That any existing free bridge forming a connecting link as an interstate bridge between this state and another state is hereby adopted as part of the state road system, and as to that part of the bridge within the boundary of this state shall be maintained by the state." Here the state road commissioner, having designated the bridge in question as a part of the state highway system was clearly required to maintain it. In one view of the case the act of designation may not be important. The proviso is that, "any existing free bridge * * * between two counties and two state routes is hereby adopted as part of the state road system and shall hereafter be maintained by the state * * *." This provision is apparently self-executing.

We are of the opinion that when the bonds aforesaid were paid, or their payment provided for as required in the statute, authorizing their issuance, the bridge became free to the public by operation of law, under the provisions of the statute quoted above, which expressly makes such bridge a part of the state highway system,

and that when the state road commissioner, through his designation of said bridge as a part of said system, by his order of November 2, 1945, the State became vested with the exclusive right to operate said bridge, and charged with the future maintenance and repair thereof. We do not think any sale or formal transfer of the bridge or its approaches, or the franchises under which it was constructed is necessary. The control of the bridge and the right to operate the same, with the burden of maintenance passed to the state road commission by operation of law. The proposed sale and conveyance of the bridge sought to be enjoined were and are unnecessary. The city having, by operation of law, lost all interest in and right to operate and control the bridge had and has nothing of value to sell; nor has the plaintiff, or those in behalf of whom he assumes to sue, such interest in the bridge as entitles them, or either of them, to the relief sought. There is and can be no prejudice to them, or any of them; and where there is no injury or prejudice, and a proposed line of action is harmless to either an individual or the public, there is no sound basis for a suit. We have not overlooked the fact that Chapter 81, Acts of the Legislature, 1937, was enacted subsequent to the construction of the Saint Albans-Sattes bridge; but the power of the State over municipalities, and the property owned by them, is, for all practicable purposes, absolute; and we find no difficulty in holding that an act passed subsequent to the construction of the bridge, did not in any wise encroach upon any vested right of the city of Saint Albans. There is no such thing as a vested right in a municipality, as against the exercise of the sovereign power of the State.

In view of our conclusion stated above, we do not consider it necessary to pass on what we think is an abstract question, namely, the power of a municipal corporation, solely through its common council, to dispose of property held by it in a proprietary capacity, without legislative authority therefor. Without detailed discussion, it is sufficient to say that, in our opinion, the weight of

authority is against such power; and clearly so when such property passes into private hands. *Smith v. Cornelius, supra; Roper v. McWhorter,* 77 Va. 214. On the general question see 37 Am. Jur., 701; 38 *id.,* 162-168; 3 Mc-Quillin on Municipal Corporations, 2d Ed. 1028; 3 Dillon Municipal Corporations (5th Ed.) 1581, 1594, 1831-1834; *Head-Lipscomb-McCormick Co. v. City of Bristol,* 127 Va. 669, 105 S. E. 500.

We have heretofore adverted to Code, 8-1-2, which, in effect, applies Chapter 8 of the Code to towns and cities organized pursuant to special acts of the Legislature, as the city of Saint Albans was chartered and organized. If the city of Saint Albans is now governed by what is now Chapter 8, formerly Chapter 47, of the Code, then, as showing the legislative viewpoint toward the sale of property of a municipality, held by it in a proprietary capacity, attention is called to the provisions of Code, 8-4-21, relating to the sale of property owned by a municipality and operated as a public utility. That statute provides: "In any case where a town shall own a water-works system, electric light plant or other public utility, and the council thereof shall deem it for the best interest of such town that such utility be sold, leased or rented, it shall be lawful for the council, by ordinance legally passed, to submit to the legal voters of such municipality, at any regular election or at any special election called for that purpose, the question of making such sale, lease or renting." Such statute continues with lengthy provisions prescribing the manner in which such election shall be held. The statute does not, in terms, say that such election shall be held; but merely that it shall be lawful for the council to call for such election. Whether a toll bridge, financed and constructed under Chapter 27, Acts of the Legislature, Second Extraordinary Session, 1933, is a public utility within the contemplation of the statute last quoted, we question, but do not decide, for the reason that, as stated above, the city of St. Albans had nothing of value to sell and, therefore, there was no call for any such election.

Answering the questions certified, we hold: (1) That the Common Council of the City of Saint Albans had the right, and, in view of existing statutes, and the action of the state road commissioner in designating the Saint Albans-Sattes bridge over the Kanawha River, and the roads leading thereto, as a part of the state highway system, the duty to declare said bridge free to .public travel; (2) that the right of said city to operate said bridge and collect tolls for the use thereof having ceased, on the accumulation of a fund sufficient to pay the outstanding bonds, issued to cover the construction thereof, the plaintiff, and those in whose behalf he sues, will not be prejudiced by the formal act of the transfer of such bridge to the State in consideration of the future operation and maintenance thereof as a free bridge; (3) that in the situation here presented the finding of fact on the part of the Common Council of the City of Saint Albans, as to the wisdom and advisability of making the said bridge free, and transferring the same to the state road commission is not material; and (4) that the city of Saint Albans, in the circumstances disclosed by the record, does not now have the legal right to continue to maintain and operate the bridge in question as a toll bridge, or as a free bridge; such right and duty rest upon the State.

We therefore remand this cause to the Circuit Court of Kanawha County for further proceedings not inconsistent with the principles herein stated.

*Ruling Affirmed.*

KENNA, PRESIDENT, concurring:

I am not troubled by .the question of whether the complainant can sustain his right to bring this proceeding, notwithstanding the holdings of this Court, in *Smith v. Cornelius*, 41 W. Va. 59, 23 S. E. 599, and *Bryant v. Logan*, 56 W. Va. 141, 49 S. E. 21, because that question was not certified by, nor developed in, the circuit court. Had the question been raised by demurrer followed by leave

to amend, the complainant likely could have brought himself within the rule announced in *Davis v. West Virginia Bridge Commission*, 113 W. Va. 110, 166 S. E. 819, a similar chancery proceeding, in which this Court said: "In view of the statutory provision that bridge bond issues are to be paid from bridge tolls, the allegation that plaintiffs use the bridge and pay tolls shows sufficient interest to sustain their suit." That statement was evidently based upon the fact that the complainant would thereby set up an injury differing from that of the public at large. If not that, the bill of complaint might have been amended to show that the public officials whose duty it was to test the validity of the contemplated action of the City of St. Albans had refused to do so and therefore complainant sues. *People v. District Court of Second Judicial Dist.*, 37 Colo. 443, 461, 86 P. 86; *White Eagle Oil & Ref. Co. v. Gunderson*, 48 S. D. 608, 205 N. W. 614, 43 A. L. R. 397; *State ex rel. Lamb v. Cunningham*, 83 Wis. 90, 53 N. W. 35, 17 L. R. A. 145, 165, 35 Am. St. Rep. 27. Under the showing in this record it is my opinion that this Court is prematurely considering the question of a proper party plaintiff.

I agree that the bridge constructed by the City of Saint Albans as a self-liquidating project under a general act of the Legislature authorizing its building became the property of the State Road Commission by operation of law upon the full discharge of the revenue bonds and other indebtedness constituting a charge upon it, but I believe that Chapter 40, Article 4, Section 26, First Extraordinary Session of 1933, as amended by Chapter 81, Acts of 1937, read literally, as is done in the Court's opinion, does not justify that conclusion. As stated in the opinion, it provides that "any existing free bridge * * * between two counties and two state routes, is hereby adopted as part of the state road system and shall hereafter be maintained by the state * * * ". The Saint Albans bridge is between two State routes, Routes 60 and 25, but it is not between two counties and since the two requirements are stated in the conjunctive by

the express terms of the act, it is my opinion that construction which disregards one of the two requirements demands an explanation. To my mind the Court's construction can be justified only by the fact that a plain legislative and public policy in this State favors the expansion of the State road system. On that theory the Court's construction could, in my opinion, come under the rule that the word "and" may be read as "or" if that is necessary in order to effectuate the plain legislative purpose. In that manner the section in question can be made to apply to a bridge that connects two State routes, but not two counties, as in this case. I do not disagree with the Court's conclusion that in this instance that sort of construction is justified.

I cannot agree that Chapter 85 of the Acts of the First Extraordinary Session of 1933 is unconstitutional *as a whole.* It is clear that the title does not include the subject matter that has caused the Court to hold the act unconstitutional, i. e. the right to construct a bridge. The title covers only the right to borrow money from the Reconstruction Finance Corporation. To the extent that it embraces an "object" not included in its title of course it is a violation of Section 30 of Article VI of our Constitution. Plainly, it is not an act that has for its main purpose "Chartering, licensing, or establishing ferries or toll bridges;" in contravention of the terms of Section 39, Article VI of our Constitution, but is an act the principal purpose of which was to authorize the City of Saint Albans to borrow money from the Reconstruction Finance Corporation for the purpose of constructing a self-liquidating toll bridge, which it did under the authority of the act. True, the act also grants the right to construct a bridge across the Kanawha River and to that extent its provisions may be unconstitutional. However, there is no provision in our Constitution that forbids the Legislature from granting a municipality the right to borrow money in anticipation of legislative authority to spend it in a certain manner, thus placing itself in line, in point of time, with the dozens of other applications for loans

made to the Reconstruction Finance Corporation in 1933 by governmental subdivisions from this State alone. That is exactly what took place, Chapter 27 of the Acts of the Second Extraordinary Session, the general act authorizing the construction of the bridge, following Chapter 85 of the Acts of the First Extraordinary Session in the same year. The first act undoubtedly is unconstitutional to the extent that it attempts to authorize chartering, licensing or establishing a toll bridge; to the extent that it authorizes simply borrowing money to be "earmarked" for that purpose, it is not.

Since the Court holds that title to the bridge passed to the State by operation of law, the question of whether the bridge was property being used for governmental purposes or for proprietary purposes does not affect the transfer. However, I do not agree with the statement made in the Court's opinion by way of dicta to the effect that a municipality cannot dispose of property held in its proprietary capacity without legislative authority. I think that the citations of 37 Am. Jur. 701, and 38 Am. Jur. 162-168, used in the Court's opinion, and an examination of the cases cited in the footnotes to the text, are sufficient to show that the clear weight of authority is that property used by a municipality for governmental purposes cannot be disposed of without legislative authority because charged with a public trust, but that used in its purely corporate capacity is subject to proprietary control and disposition.

For the foregoing reasons I agree with the Court's conclusion which I reach in a partly different manner.