CHARLESTON TRANSIT COMPANY, *a Corporation*

*v.*

JOSEPH P. CONDRY, INDIVIDUALLY, AND AS COMMISSIONER OF THE DEPARTMENT OF MOTOR VEHICLES OF THE STATE OF WEST VIRGINIA

(CC 819)

Submitted January 25, 1955. Decided March 8, 1955.

GIVEN and RILEY, JUDGES, dissenting.

*Spilman, Thomas, Battle & Klostermeyer, Wood Bouldin, Jr., Stuart W. Thayer,* for plaintiff.

*John G. Fox,* Attorney General, *T. D. Kauffelt,* Assistant Attorney General, for defendant.

LOVINS, PRESIDENT:

This declaratory judgment proceeding was instituted in the Circuit Court of Kanawha County by the Charleston Transit Company against Joseph P. Condry, individually and as Commissioner of the Department of Motor Vehicles of the State of West Virginia. The plaintiff and defendant will be hereinafter so designated.

The question at issue here is whether the municipalities of Charleston, South Charleston and St. Albans have a lawful right to levy and collect a seat mile tax or tax in lieu thereof for the operation of passenger buses wholly within the corporate boundaries of the three municipalities, or should such seat mile tax or tax in lieu thereof be paid to the State of West Virginia.

The plaintiff files its petition alleging the facts hereinafter stated. The City of Charleston filed an intervening petition. The defendant demurred to the petition of the plaintiff. The plaintiff demurred to an intervening petition of the City of Charleston. The trial court overruled the demurrer of the defendant but refused to rule on the

demurrer of the plaintiff to the intervening petition filed by the City of Charleston. Questions arising on the ruling of the trial court on the demurrer of defendant were certified.

The petition of the plaintiff alleges that prior to 1933, it operated a system of electrically propelled trolley cars and occupied a portion of certain streets in the three municipalities with tracks and other appliances. Under the franchise authorizing the operation of the trolley car system, the plaintiff was required to pay certain fees, charges and taxes for the operation of such system.

In 1933 it was apparent that the trolley car system was becoming obsolete and the plaintiff desiring to continue the transportation of passengers by bus, procured the adoption of ordinances in the three municipalities. Such ordinances provided in detail and at some length for the regulation and operation of the buses substituted for trolley cars. Such ordinances provided for the gradual abandonment of the trolley car operation.

The Cities of Charleston, St. Albans and the Town of South Charleston, by ordinances duly adopted on the 24th day of May, 1937, the 23rd day of January, 1939, and about the 28th day of April, 1939, permitted the abandonment of the transportation of passengers by electrically propelled trolley cars and authorized the plaintiff to substitute buses for such purposes. Such ordinances provided for the payment of certain fees, charges and taxes on the basis of a seat mile tax or tax in lieu thereof. Since the year 1939, the three municipalities above mentioned, have permitted the operation of buses for passenger transportation and collected the tax provided for in the respective ordinances.

By a memorandum dated January 6, 1954, and addressed to all holders of certificates of authority for the transportation of property or persons for hire, the defendant made demand for the payment of all passenger seat mile tax and registration fees from that date to the Department of Motor Vehicles and directed that passenger seat mile tax

and registration fees should be paid to that Department, regardless of the fees which might then, or in the future, be paid to the various municipalities in the State of West Virginia.

The defendant based his demand upon an opinion of the Attorney General of this State dated January 5, 1954, advising him that Section 13, Article 10, of that part of Chapter 129, Acts of the Legislature, 1951, Regular Session, designated as Chapter 17-A, is contrary to the Constitution of this State.

Subparagraph 4, Section 3, Article 10 of Chapter 129, idem, provides in part that, "* * * For transportation of passengers there shall be paid one-thirtieth of a cent for each passenger seat multiplied by the total number of miles that will be traveled over any public highway in this state, or over any streets or alleys within any municipality in this state, by such motor vehicles during the quarter year. * * *".

That portion of the statute which the Attorney General characterized as unconstitutional in his opinion reads as follows: "The holders of a certificate of convenience and necessity authorizing the transportation of property or person for hire wholly within any incorporated city or town and within its adjacent suburban area not exceeding three miles distant from the city boundary shall pay the fees and passenger seat tax provided for in this article, as to such operation wholly within such city or town to such city or town instead of to the department of motor vehicles, provided that any such city or town may collect the fee or tax for the operation wholly within such city or town in lieu of but not greater than the fees and taxes provided in this article.", Section 13, Article 10, of that part of Chapter 129, Acts of the Legislature, 1951, Regular Session, designated as Chapter 17-A. The statute just quoted is similar to a portion of Section 7, Chapter 60, Acts of the Legislature, 1933, Extraordinary Session.

The pertinent portion of Section 7, Chapter 60, idem, was before this Court in *Transport Corp.* v. *Wheeling,* 115

W. Va. 293, 302, 175 S. E. 219. In that case, in discussing the statute, this Court uses the following language: "Section 7 provides: 'If the proposed operation be wholly within an incorporated city of more than eight thousand population, or design to serve any such city, and its adjacent suburban area, not exceeding three miles distant from the city boundary, then in such case the fees or passenger seat tax provided in section nine and seventeen of this article, as to such operation wholly within such city, shall accrue to and be paid to such city or town instead of the commissioner; and any such city or town may by public ordinance fix, charge and collect a fee or tax for the operation within the city or town in lieu of, but not greater than, the fee charged in sections nine and seventeen hereof.' In view of the foregoing, we are of opinion that the city of Wheeling is restricted to the authority conferred by section 7 of the Act in requiring mileage tax on motor vehicles operating over its streets and alleys and that the provision of the ordinance requiring mileage tax on all motor vehicles operating over regular routes or between fixed termini is invalid." The case of *Transport Corp.* v. *Wheeling, supra,* was decided before the adoption of Section 52, Article VI of our Constitution, which reads as follows: "Revenue from gasoline and other motor fuel excise and license taxation, motor vehicle registration and license taxes, and all other revenue derived from motor vehicles or motor fuels shall, after the deduction of statutory refunds and cost of administration and collection authorized by legislative appropriation, be appropriated and used solely for construction, reconstruction, repair and maintenance of public highways, and also the payment of the interest and principal on all road bonds heretofore issued or which may be hereafter issued for the construction, reconstruction or improvement of public highways, and the payment of obligations incurred in the construction, reconstruction, repair and maintenance of public highways.

The defendant relies on Section 52, Article VI, above quoted, as well as Section 6, Article X of the Constitution,

which reads as follows: "The credit of the State shall not be granted to, or in aid of any county, city, township, corporation or person; nor shall the State ever assume, or become responsible for the debts or liabilities of any county, city, township, corporation or person; nor shall the State ever hereafter become a joint owner, or stockholder in any company or association in this State or elsewhere, formed for any purpose whatever."

The grounds of demurrer assigned by the defendant are: That municipalities are not authorized to levy or collect any of the taxes authorized by Article 10 of that part of Chapter 129, Acts of the Legislature, 1951, Regular Session, designated as Chapter 17-A, or any tax in lieu thereof, for the reason: (a) That that portion of Article 10, idem, violates Section 52, Article VI of the Constitution of this State, (b) that the payment to the municipalities of any of the fees or tax imposed or required by Article 10, idem, or any tax in lieu thereof, or other tax imposed or paid in lieu thereof, violates Section 6, Article X of the Constitution.

The trial court overruled the demurrer to the petition as stated above. In a memorandum of opinion made a part of the record, the trial court held that the funds paid to the municipalities should be allocated and used for street purposes.

Upon such ruling, the trial court certified the following questions to this Court: "1. The payment to the municipalities mentioned therein of any of the fees, or taxes, imposed or required by Chapter 17A, Article 10 of the Code of West Virginia, 1931, as amended, [Chapter 129, Acts of the Legislature, 1951, Regular Session], or the payment to the municipalities of an amount in lieu of the fees, or other taxes imposed or required by the above-mentioned section of the Code, is in violation of Article VI, Section 52 of the Constitution of West Virginia. 2. The payment to the municipalities mentioned therein of any of the fees, or taxes, imposed or required by Chapter 17A, Article 10 of the Code of West Virginia, 1931, as

amended, [Chapter 129, Acts of the Legislature, 1951, Regular Session] or the payment to the municipalities of an amount in lieu of the fees, or other taxes imposed or required by the above-mentioned section of the Code, is in violation of Article X, Section 6 of the Constitution of West Virginia."

The trial court however did not rule on the demurrer of plaintiff to the intervening petition of the City of Charleston and any question raised on such demurrer is not before us.

The plaintiff, in brief and argument, raises a number of questions as bearing on the questions certified, viz: (a) That even though the Constitution is applicable to municipalities, there is no requirement that municipal ordinances contain a provision requiring allocation of funds derived from such taxes to be used and appropriated for street and highway purposes; (b) that a provision requiring such allocation should be read into the ordinance passed by the three municipalities if necessary to sustain their constitutionality; (c) that this Court in construing Section 13, Article 10, Chapter 129, idem, should consider Section 13, even though it may be held unconstitutional.

We do not think that any of the foregoing subsidiary questions require discussion. The conclusion we reach on the questions certified obviates discussion and determination of such questions.

We are authorized to notice and discuss questions which fairly arise upon the record. *Baier* v. *City of St. Albans,* 128 W. Va. 630, 637, 39 S. E. 2d 1.

We prefer to decide the questions certified upon the constitutionality of Section 13, Article 10, of that part of Chapter 129, Acts of the Legislature, 1951, Regular Session, designated as Chapter 17-A. Section 13, Article 10, Chapter 129, idem, is a clear, definite, certain statement of legislative intent and requires no construction or interpretation. The legislative intent, as indicated by such statute, is clear in that it permits the municipalities to impose and collect a seat mile tax or tax in lieu thereof

for the operation of passenger buses wholly within the corporate boundaries. No authority will be found in Article 10, Chapter 129, idem, for the collection by the state and payment into the state treasury of the funds derived from taxes assessed on the intra-urban operations of passenger buses. If Section 13, idem, is a valid legislative enactment, the taxes must be paid to and used by the municipalities, and the authorities of this state have no concern in the levy or collection of such tax on intra-urban operation of passenger buses.

Is Section 13, Article 10 of Chapter 129, idem, violative of Section 52, Article VI and Section 6, Article X of the Constitution of this State? Before specifically passing on those questions, it is necessary to say that Section 9, Article X of the Constitution confers upon the Legislature power to authorize the authorities of the cities, towns and villages to assess and collect taxes within their territorial jurisdiction. The three provisions of the Constitution here considered should be read together. Section 9, Article X, of our Constitution reads as follows: "The Legislature may, by law, authorize the corporate authorities of cities, towns and villages, for corporate purposes, to assess and collect taxes; but such taxes shall be uniform, with respect to persons and property within the jurisdiction of the authority imposing the same."

Section 52, Article VI, of the Constitution has been given a contemporaneous construction or interpretation for ten years or more by the people and the courts. We do not feel that we should disturb or overthrow it since such construction or interpretation is not plainly wrong. *State* v. *Harden,* 62 W. Va. 313, 323, et seq., 60 S. E. 394. See *Simms* v. *County Court,* 134 W. Va. 867, 61 S. E. 2d 849. The same principle is likewise applied to statutes, though as above noted, the construction of the statute is not involved here. See *Brandon* v. *Board of Control,* 84 W. Va. 417, 100 S. E. 215; *Ballard* v. *Vest,* 136 W. Va. 80, 65 S. E. 2d 649; *State* v. *County Court of Kanawha County,* 137 W. Va. 127, 70 S. E. 2d 260; *Fidelity Mut. Life Ins. Co.* v. *Sims,* 140 W. Va. 49, 82 S. E. 2d 312.

There is another appropriate principle of constitutional law, long established and followed in this jurisdiction. Statutes will not be held violative of the Constitution except in the clearest cases and where it is necessary to a decision of the controversy. *Bridges* v. *Shallcross*, 6 W. Va. 562, 569, et seq. "Unless the question is free from doubt, it is the duty of the courts to uphold legislative acts as constitutional.", *Booten* v. *Pinson*, 77 W. Va. 412, 428, 89 S. E. 985. See *Road Commission* v. *County Court*, 112 W. Va. 98, 163 S. E. 815; *Cosner* v. *See*, 129 W. Va. 722, 42 S. E. 2d 31. *Lingamfelter* v. *Brown*, 132 W. Va. 566, 573, 52 S. E. 2d 687.

As cogently pointed out by an eminent writer on the question of constitutional law, provisions contained in a Constitution should be applied by the courts according to the common understanding and everyday requirements of life, since the people who voted for it must have so understood it. "The people make them, [constitutions] the people adopt them, the people must be supposed to read them, with the help of common-sense, and cannot be presumed to admit in them any recondite meaning or any extraordinary gloss." 1 Story on the Constitution, Fifth Edition, Section 451.

When the language used in Section 52, Article VI of the Constitution is considered, it is persuasive that such Section applies only to the state funds and the use and appropriation thereof by the legislature rather than by municipal councils. Such words as "statutory refunds", "legislative appropriation" and "appropriation" are found in Section 52, Article VI of the Constitution. Those words may be applied to actions by common council but common understanding and acceptation confines such terms to the state legislature rather than municipal offices. See II Am. Jur., Constitutional Law, Section 79. We think that the purpose of the people of this state in adopting Section 52, Article VI of the Constitution, was to prevent diversion by the legislature of funds derived from the sources named in the constitutional provision to purposes other than the

construction, reconstruction, repair and maintenance of public highways; and the payment of interest and principal on road bonds theretofore or thereafter issued.

It is well known that for many years it has been the practice of municipalities of this State to levy taxes connected with the use of streets other than seat mile taxes or tax in lieu thereof. This practice has prevailed before and since the adoption of Section 52 of Article VI of the State Constitution. We do not think that the people of this State, by the adoption of such constitutional provision intended to innovate upon or change that practice.

Since Section 52, Article VI, of the Constitution, does not in terms apply to municipal taxes or municipal finance, we hold that under the plenary power of the legislature, as well as the direct authority conferred on that body by Section 9, Article X of the Constitution, the enactment of Section 13, Article 10, of that part of Chapter 129, Acts of the Legislature, 1951, Regular Session, designated as Chapter 17-A, is a valid and constitutional exercise of legislative power.

The defendant contends that Section 13, Article 10, Chapter 129, idem, violates Section 6, Article X of the Constitution, in that it extends the credit of the state to municipalities. There is no merit to such contention. The funds raised by the taxes imposed by the municipalities are municipal funds and are not, nor have they ever been, state funds. They never accrued to the state. Hence, it follows that the credit of the state has not been extended to the three municipalities, nor has the state assumed or become responsible for the debts of such municipalities.

Of course, if the funds belonged to the state and were appropriated by the legislature for payment of local debts, Section 6, Article X of the Constitution, would, in all probability, apply and prevent such appropriation, as was held in the case of *Charleston* v. *Sims*, 132 W. Va. 826, 54 S. E. 2d 727. See *Berry* v. *Fox*, 114 W. Va. 513, 172 S. E. 896.

· In instances where there is a duty of the state such as was disclosed in the case of *Kenny* v. *Webster County*

*Court,* 124 W. Va. 519, 21 S. E. 2d 385, the state may use funds in effectuating that purpose. The same principle was stated in *State* v. *Sims,* 129 W. Va. 694, 41 S. E. 2d 506, where the police power of the state, in advancing the cause of public aviation, was invoked.

There is no requirement in the applicable constitutional or statutory provisions requiring that the ordinances passed by the three municipalities levying a seat mile tax or tax in lieu thereof, as authorized by Section 13, Article 10, of that part of Chapter 129, Acts of the Legislature, 1951, Regular Session, designated as Chapter 17-A, be allocated to roads or street purposes. The trial court was in error in its ruling to that effect. The funds derived from seat mile tax or tax in lieu thereof levied by the three municipalities of Charleston, South Charleston and St. Albans may be used by the municipal authorities of the three municipalities for general purposes or for road or street purposes as their discretion may dictate.

Accordingly, the ruling of the trial court holding Section 13, Article 10, of that part of Chapter 129, Acts of the Legislature, 1951, Regular Session designated as Chapter 17-A constitutional, is affirmed. But, insofar as the ruling of the trial court which requires that the named municipalities allocate by ordinances the funds derived from seat mile tax or tax in lieu thereof to street or road purposes, such part of the ruling is reversed.

*Affirmed in part;*
*reversed in part.*

GIVEN, JUDGE, dissenting:

As strange as it may seem, the majority opinion in this case permits a legislative enactment to override and destroy a constitutional provision, the Good Roads Amendment, Section 52 of Article VI. The effect of the holding is that the Legislature may now authorize the levying, collection and expenditure of any and all revenues referred to in the constitutional amendment, including all revenues derived from gasoline, other motor fuels, motor vehicle

registration license fees or taxes, "and all other revenue derived from motor vehicles or motor fuels", by municipalities or other governmental subdivisions, without requiring the application of any of such revenues to the "construction, reconstruction or improvement" of the State roads, or "the payment of the interest and principal on all road bonds heretofore issued or which may be hereafter issued". That the Legislature will possibly not do so is no answer to the problem. We are here concerned only with the power of the Legislature to act.

Section 52 of Article VI of the Constitution was submitted to a vote of the people at the general election held November 3, 1942, pursuant to the provisions of Chapter 11 of the 1941 Acts of the Legislature. In that chapter it was directed that the proposed amendment should be known as the "Good Roads Amendment". Balloting on the proposed amendment was required to be "For ratification of 'Good Roads Amendment' " or "Against Ratification of 'Good Roads Amendment' ". Publication of the proposed amendment in some newspaper in each county in which a newspaper was published was required to be made at least three months prior to the election. Thus, there can be no doubt that the people understood that the purposes of the proposed amendment related solely to good roads of the State, not to streets and alleys of municipalities. The purposes of the amendment, to help provide a system of good roads for the entire State, and to establish and stablize a Good Roads bond market for the State, were, and are, common knowledge.

I think of no better way to demonstrate the manner in which the meaning of the constitutional amendment has been twisted and destroyed than to quote the amendment, and insert within the quote, within parentheses, the added or changed meaning effected by the majority opinion, as follows: "Revenue (except revenue collected by municipalities or other governmental subdivisions) from gasoline and other motor fuel excise and license taxation, motor vehicle registration and license taxes, (except as such revenues relate to buses) and all other revenue derived

from motor vehicles (except buses) or motor fuels (except motor fuels used in municipalities) shall, (within the discretion of the Legislature) after deduction of statutory refunds (or refunds authorized by municipalities or other governmental subdivisions) and costs of administration and collection authorized by legislative appropriation, (or by municipalities or other governmental subdivisions) be appropriated and used solely for construction, reconstruction, repair and maintenance of public highways, (including streets and alleys) and also the payment of the interest and principal on all road bonds (and street and alley bonds) heretofore issued (whether by the State, a municipality or other governmental subdivision) or which may be hereafter issued for the construction, reconstruction or improvement of public highways, (including streets and alleys) and the payment of obligations incurred in the construction, reconstruction, repair and maintenance of public highways (including streets and alleys. Provided: That any such tax collected by a municipality or other governmental subdivision need not be appropriated or used for public highways, or streets or alleys)." An attempt to harmonize the language of the amendment with the language included in parentheses, the language necessary to reflect the meaning of the majority holding, clearly reveals the impossible position of the majority.

The language of the amendment, in my view, plainly and definitely requires that all revenues derived from the sources designated in the amendment, which undoubtedly include the tax imposed by the statute in question, be appropriated by the State Legislature and used solely for the specific purposes therein mentioned. There is no exception even hinted in the language, and no words used from which any exception could possibly be implied. There is not the least indication that the Legislature was to have power to delegate the levying, collection or expenditure of any such revenues to any municipality, or that any of such revenues could be used for any purpose other than "construction, reconstruction or improvement" of the roads of the State. On the contrary, the language

of the constitutional amendment plainly and specifically applies to all revenues derived from the sources therein mentioned. The majority opinion dares not attempt to find in the amendment language justifying, even by implication, any such exception. The language in the amendment is simply ignored or by-passed.

Since the Court holds that the Legislature may authorize a municipality to levy and collect the seat mile tax, and that such a tax is not prohibited by the constitutional amendment it seems indisputable that, by the same reasoning, the Legislature could authorize municipalities or other governmental subdivisions to collect any "Revenue from gasoline and other motor fuel excise and license taxation, * * * and all other revenue derived from motor vehicles or motor fuels * * *", referred to in the amendment. The plain effect of the majority holding is to re-establish the law precisely as it was before the adoption of the amendment. It renders the amendment totally without effect in so far as the power of the Legislature is concerned. The Legislature now has power to accomplish precisely what it could have done before the adoption of the Good Roads Amendment. The Good Roads Amendment is now a dead amendment.

The case of *Transport Corp.* v. *Wheeling,* 115 W. Va. 293, 175 S. E. 219, cited in the majority opinion, does not support the majority view. That decision was made prior to the adoption of the constitutional amendment. The adoption of the constitutional amendment of itself invalidated all existing statutory provisions in conflict therewith. See *Swift & Co.* v. *City of Newport News,* 105 Va. 108, 52 S. E. 821, 3 L.R.A., N.S., 404.

The majority would invoke, in support of its conclusion, a supposed "ten years or more" of contemporaneous construction. The statute was not enacted until 1951. Therefore, no ten years contemporaneous construction, or any long time construction whatever would be possible. The fact that some municipality may have collected such a tax as here involved, by virtue of a statute invalidated by the adoption of the constitutional amendment, can not amount

to contemporaneous construction. Moreover, the language of the amendment is so clear and plain that the rule of contemporaneous construction can have no application. See *Flesher* v. *Board of Review*, 138 W. Va. 765, 77 S. E. 2d 890, and cases there cited. Most certainly, the collection of such a tax, authorized only by a municipal ordinance, should not be treated as contemporaneous construction of a constitutional amendment.

The majority argues that the Legislature, under its plenary power, as well as by virtue of Section 9 of Article X of the State Constitution, had power to enact the legislation here involved. Of course, there is no question that the Legislature may, in proper cases, authorize municipalities to levy and collect taxes. It is just as clear and certain, however, that the power of the Legislature in that respect may be limited by the people by the adoption of a constitutional amendment.

In my view, the conclusion reached by the majority is not in accord with the views expressed in the opinion in the recent case of *State ex rel. State Road Commission* v. *O'Brien, Secretary of State*, 140 W. Va. 114, 82 S. E. 2d 903, wherein it is stated: "* * * Article VI, Section 52, merely creates a fund into which all revenues from gasoline, and other motor fuel, excise and license taxation, motor vehicle registration and license fees, and all other revenues, derived from motor vehicles, or motor fuels, shall go, and provides that such funds shall be used only for the construction, reconstruction or improvement of public highways, and the payment of obligations incurred therein. This section is not self-enacting, and the fund created by it must rely upon legislative enactment for its resources. It does not provide that any revenue shall come into the fund, but it does provide that if, by legislative enactment, taxes are derived from certain sources, they may not go into any other fund or be used for any other purpose. In other words, the moneys which go into this fund do not constitute a part of the general revenues of the State, since they can not be used for general purposes, but only for the purposes specified in the Amendment * * *".

Being of the views indicated, I respectfully dissent. I am authorized to say that Judge Riley concurs in this dissent. We are of the opinion that Section 13 of Article 10 of Subchapter 17A of Chapter 129 of the Acts of the 1951 Legislature is clearly in conflict with Section 52 of Article VI of the State Constitution.