STATE *ex rel.* WEST VIRGINIA BOARD OF EDUCATION

*v.*

EDGAR B. SIMS, AUDITOR OF THE STATE OF WEST VIRGINIA

(No. 10886)

Submitted September 4, 1957. Decided December 17, 1957.

*W. W. Barron,* Attorney General, *Fred H. Caplan,* Assistant Attorney General for relator.

*H. Jackson Powell, Harold A. Bangert, Jr.,* for respondent.

DUCKER, JUDGE:

The petitioner, The State of West Virginia, on the relation of the West Virginia Board of Education seeks in this original proceeding a writ of mandamus to require the respondent, Edgar B. Sims, Auditor of the State of West Virginia, to issue a warrant drawn by Bluefield State College in due form upon the State Treasury, on "Account Number 8642-9, Bequests, Endowments and Scholarships, Special Revenue Fund", in the amount of $157.76, in payment of a sum due and owing to Remington Rand for certain shelving purchased for the library of

Bluefield State College, pursuant to the Special Revenue Appropriations made by the Legislature in Chapter 1, Title 2, Section 6 of the Acts of 1956, the respondent having refused to issue the warrant upon the request and demand of the relator.

The relator, West Virginia Board of Education, is a corporation created by the West Virginia Legislature, Code of 1931, 18-2, as amended by Chapters 72 and 88 of the Acts of the Legislature, 1947, and has the general control, supervision and mangement of the business and educational affairs of Bluefield State College, a state educational institution; and the respondent, Edgar B. Sims, is the Auditor of the State of West Virginia, and, as such, is vested and charged with the duty of issuing warrants on the State Treasury for the purpose of honoring proper requisitions for the payment of funds in the control and custody of the State Treasury.

The petitioner alleges: that a gift was made to the relator, Bluefield State College, in the will of Floyd Craft, dated February 17, 1947, amounting to $8860.30, and the same was accepted by the relator and placed by the State Treasurer in a special account, numbered and designated as hereinabove specified, for Bluefield State College; that by the enactment of the 1956 Budget Bill, Section 6 of Title 2, the legislature appropriated the necessary funds from said gift to pay the warrant by the filing by Bluefield State College with the Director of the Budget and the State Auditor prior to the beginning of the fiscal year 1956-1957 of the estimate of its revenues and expenditures; and that relator was authorized to incur the indebtedness to Remington Rand for the library shelving.

The respondent in his answer says that the acceptance of a gift made to relator and the placing of the same in a separate account were not authorized by law, and that the refusal of the respondent to honor the requisition drawn upon said account was proper, and that the relator

has not complied with the conditions precedent required in Section 6 of Title 2 of the Budget Bill for the fiscal year beginning July 1, 1956.

Counsel for respondent in their briefs contend (1) that Article XII, Section 4 of the West Virginia Constitution, as modified by The Irreducible School Fund Amendment, providing that all bequests made to this state for the purposes of education or where the purposes of such bequests are not specified are to be placed in the general school fund for the support of the free schools of the state, and that this special bequest should have been so placed; (2) that the testator bequeathed in contemplation of the effect of existing law, and if the law requires a different disposition of a bequest than the testator may actually have intended, the law must prevail; (3) that expenditures from the general school fund must be based upon a specific appropriation bill of the legislature in which certain specified maximum amounts are authorized to be applied to specific purposes of government; (4) that the legislature could not delegate the determination of the purpose for which, or the amount of which, public moneys are to be expended to another branch of the state government, and that, therefore, Section 6, Title 2 of the 1956 Budget Bill is unconstitutional as an improper delegation of its powers; (5) that the amounts or the purposes are not specified in the Budget Bill and the same do not constitute an appropriation within the requirements of Article VI, Section 51 of the West Virginia Constitution; (6) that usage or long continued legislative or executive practice does not control the interpretations to be given laws allegedly authorizing expenditures of public money; and (7) that, argumentatively in support of respondent's contention that no fund existed from which the alleged appropriation was made, says that under Code 25-1-8, as amended, the only authority to deposit gifts made to institutions for their use and benefit is the deposit of the "profit" from the use or investment of any such bequest.

The will of Floyd Craft devised and bequeathed his residuary estate, from which was realized the sum of $8860.30, in the following language:

> "NINTH: All the rest, residue and remainder of my estate, I give to the Bluefield Colored Institute of West Virginia located at Bluefield, West Virginia. If this should not be the correct title of this institution, nevertheless, it is my intention that this institution located at Bluefield, West Virginia, regardless of what its exact name shall be, shall receive the rest, residue and remainder of my estate."

Of utmost importance in this case is the determination of the question whether a gift such as was made by the testator here shall be considered as passing to the state for the benefit of the general school fund under the provisions of Article XII, Section 4, of the West Virginia Constitution and usable for any educational purposes, or whether, when accepted by the college it passed to the state for use only in connection with Bluefield State College. With other classes of property and moneys, such as the proceeds of the sale of forfeited and delinquent lands and the proceeds of estates of persons dying without wills or heirs, being required to be placed in the "school fund", that Section of the Constitution also provides:

> "* * * all grants, devises or bequests that may be made to this State, for the purposes of education or where the purposes of such grants, devises or bequests are not specified * * * shall be set apart as a separate fund, to be called the 'School Fund'."

Is then the gift of Floyd Craft to be construed as having been made "for the purposes of education" within the meaning of the above quoted constitutional provision? It seems only reasonable for us to conclude that the foregoing specification of grants, devises or bequests made to the state for the purposes of education, particularly in the light of the latter part of that provision which says that " * * * where the purposes of such grants, devises or

bequests are not specified * * * " indicates that the words so used in the first part of the provision were intended to mean only those general grants, devises or bequests made to the state for educational purposes which have no qualifying or limiting terms or conditions, and not to those grants, devises or bequests which are limited or restricted in some manner inconsistent with a general devise or bequest. What was meant by that constitutional provision, we think, is to give to the school fund for general educational purposes, as the Board of Education may determine, (1) any property so given by grant, devise or bequest in broad general and unrestricted terms and (2) any property so given by a grant, devise or bequest in which no purpose whatsoever is specified. Here we have a specific limitation or restriction upon the use of the proceeds of the gift, in that the testator intended that such proceeds should be used only for the benefit of the institution named. Had the testator contemplated or desired that this bequest be used for any general educational purposes, it is only reasonable to assume that he would not have expressed the particular desire found in the language he used in making the gift. Accordingly, we do not consider this gift as being one to which that provision of the Constitution applies.

Inasmuch as Bluefield State College is an arm of the state and has no existence independent of the state, the gift of Floyd Craft to it is, of course, a gift to the state. Our interpretation of the non-applicability of the foregoing provision of the Constitution to this gift leaves the use of the gift subject to the effect of the limitation contained in the will, namely, that it is to be used by the state through its agency, the West Virginia Board of Education, for the benefit of Bluefield State College and not for some other use which that Board may desire to make of it.

This Court should, if possible, give force and effect to the terms of the will of Floyd Craft, which is not ambiguous with respect to this gift and which is clear in its intent, to the end that the beneficiary should be given the benefit

of the gift thereby made. To do otherwise would defeat the purpose and intention of the testator, for if that intention cannot be carried out because of some illegality causing the legacy to lapse, the property embraced in such bequest may, according to Code 41-3-4, pass as in case of intestacy. Even the latter effect would be more equitable to the testator than to authorize the diversion of the gift to purposes which he did not intend. In the absence of any constitutional or statutory provision to the contrary, the paramount rule is that the intent of the testator clearly expressed should be given force and effect. *Weiss* v. *Soto*, 142 W. Va. 783, 98 S. E. 2d 727; *Wilcox* v. *Mowrey*, 125 W. Va. 333, 24 S. E. 2d 922. Furthermore, it is not amiss, we think, to say that benefactions in favor of public institutions, or to any one particular public institution, should be looked upon favorably, so that prospective donors may be encouraged to make such gifts. Doubtless, many persons may desire to leave a sum of money to a particular state school without expressing the exact purposes for which it is to be used.

Has there been a specific appropriation by the legislature of the amount necessary to pay Remington Rand the account due the latter from the special account into which the proceeds of the bequest of Floyd Craft was placed? Consideration of respondent's contention in this respect involves also the point raised, and hereinbefore enumerated as the fifth one of the respondent, namely, that the amounts or the purposes of the appropriation purportedly made by the budget do not constitute an appropriation within the requirements of Article VI, Section 51 of the West Virginia Constitution. These two questions or aspects of this case can best be answered by quoting the several statutes applicable.

Code 25-1-8, which is subject to the transfer of the powers therein given to the Board of Control to the West Virginia Board of Education under Code 18-2-13a, as amended by Chapter 88, Acts of the Legislature, 1947, contains the following provisions:

"The state board of control is hereby empowered
to accept any gift or devise of any property or
thing which lawfully may be given. If such gift
or devise is to any particular institution named in
sections three or four of this article, whatever
profit shall arise from its use or investment shall
be paid into the state treasury for the use and
benefit of such institution, and the board is hereby
invested with the title to the property which is or
may be the subject of such gift or devise."

The institutions in section three above referred to in-
clude Bluefield State College, which was formerly desig-
nated as Bluefield Colored Institute. Insofar as its pro-
visions are applicable here, Code 12-2-2, as amended by
Chapter 64, Acts of the Legislature, 1941, is as follows:

"All officials and employees of the state author-
ized by statute to accept moneys due the state of
West Virginia shall keep a daily itemized record
of such moneys so received for deposit in the
state treasury and shall deposit promptly with the
state treasurer all moneys received or collected
by them for or on behalf of the state for any pur-
pose whatsoever. When so paid, such moneys
shall be credited to the state fund and treated by
the auditor and treasurer as part of the general
revenue of the state, and shall not be used for any
purpose whatsoever unless and until authorized
and directed by the legislature, except the follow-
ing funds:

\*　　\*　　\*　　\*

"(c)　All endowment funds, bequests, dona-
tions, executive emergency funds, and death and
disability funds;

\*　　\*　　\*　　\*

"All moneys, excepted as aforesaid, shall be
paid into the state treasury in the same manner
as collections not so excepted, and shall be car-
ried in separate accounts to be used and expended
only for the purpose for which the same are autho-
rized to be collected by law. The gross amount
collected in all cases shall be paid into the state
treasury, and commissions, costs and expenses of
collection authorized by general law to be paid
out of the gross collection are hereby authorized

"to be paid out of the moneys collected and paid into the state treasury in the same manner as other payments are made from the state treasury."

The permission given by the legislature to the Board of Education, formerly to the Board of Control, in its enactment of Code 25-1-8, hereinabove quoted, expressly provided authority for the Board of Education to accept the gifts such as that made by Craft to Bluefield State College. The language of this statute is clear and the title to the gift was, upon acceptance, vested in the state. The questions raised by the respondent with respect to the proceeds of this gift are whether under the foregoing constitutional provision the gift is subject to any use thereof the Board may desire to make of it, which question we have hereinbefore answered, and whether under Article VI, Section 51 of the West Virginia Constitution there has been an "appropriation" in this instance, the respondent saying that because of the legislature's failure to set out in the budget bill the amount and purpose of the use of a part of the proceeds of this gift to pay Remington Rand there has been no valid appropriation.

Article VI, Section 51, of the West Virginia Constitution, is as follows:

Sub-Section B.—"Second: Each budget shall be divided into two parts, and the first part shall be designated 'Governmental Appropriations' and shall embrace an itemized estimate of the appropriations; * * * (7) for such other purposes as are set forth in the Constitution and laws made in pursuance thereof.

Third: The second part shall be designated 'General Appropriations', and shall include all other estimates of appropriations. * * * clearly itemized and classified; * * * ".

In consequence of our holding the constitutional provision first herein quoted not applicable to this gift, we see no inhibition in Article VI, Section 51, against the legislature enacting the foregoing statutes for the benefit

of its public institutions, so that gifts can be accepted and the proceeds properly kept intact in special accounts. The latter constitutional provision should be given such liberal construction as will afford the legislative branch of the government the opportunity to reasonably effect a practical application of the conditional requirements. To that end, it was provided in Section 6, Title 2 of the Budget Bill enacted by the legislature in 1956, that funds in such special accounts were appropriated according to the results of the procedural requirements as to specified purposes and amounts in accordance with the provisions of said section, which is as follows:

"Sec. 6. *Special Revenue Appropriations.*— There is hereby appropriated for expenditure during the fiscal year one thousand nine hundred fifty-seven appropriations made by general law from special revenue which are not paid into the state fund as general revenue under the provisions of section two, article two, chapter twelve of the code of West Virginia, one thousand nine hundred thirty-one: *Provided, however,* That none of the moneys so appropriated by this section shall be available for expenditure except in compliance with and in conformity to the provisions of article two and three, chapter twelve of the code of West Virginia, and chapter thirty-nine, acts of the Legislature, regular session, one thousand nine hundred thirty-nine, and unless the spending unit has filed with the state director of the budget and the state auditor prior to the beginning of each fiscal year:

"(a) An estimate of the amount and sources of all revenues accruing to such fund;

"(b) A detailed expenditure schedule showing for what purposes the fund is to be expended."

As to compliance with the requirements of the Budget Bill, a stipulation was entered into between the relator and respondent which shows that Bluefield State College, among the several items in its estimate of receipts and expenditures for the fiscal year ending June 30, 1957, filed with the Director of the Budget and the State Auditor,

listed an item designated "Equipment $2000.00", and it is under this item that the warrant was drawn for the payment to Remington Rand. The respondent says that this is not sufficient because the estimate does not specifically designate the debt to Remington Rand for an appropriation therefor by the legislature for the payment of the same. The appropriation of the amounts shown in the estimate were thus considered a part of the budget bill for the fiscal year. There was left to the management of Bluefield State College the determination of what "equipment" should be purchased within the amount set forth in the estimate. This is a reasonable and practical thing to do, for otherwise, there would be placed upon the legislature an unlimited and almost impossible burden of seeing to the application of its appropriations. We are of the opinion that the appropriation as so made is sufficiently specific to meet the constitutional requirements of Article VI, Section 51.

We do not consider as well taken respondent's assertion that the authorization to Bluefield State College to administer the appropriation so made is in violation of the constitutional inhibitions against one branch of the government delegating its powers to either of the other two branches. This is purely a delegation of a ministerial or administrative duty to a disbursing agency of the executive branch of the government, and does not amount to a delegation of the power of appropriation vested in the legislature. The delegation in this instance is comparable to many other instances in the conduct of the business of the various departments of the government, and the legislature has the right to assume that the officers of the state will faithfully discharge their duties. As it could not in any substantial degree succeed in any attempt to see to the proper execution of the administrative duties necessarily attendant upon, or in consequence of, appropriations made for the operation of such departments, the legislature has, wisely we think, not attempted to do so.

Respondent further says that usage or long continued legislative practice does not control the interpretations to be given laws relating to the expenditure of public money.

As shown by the appendix to the brief of counsel for petitioner, there are many special accounts, consisting of large amounts of money, carried by the state treasurer covering various matters and funds for particular purposes. Appropriations such as has been made in this instance have been made from time to time from these accounts for the purposes for which they are held. So it is true that usage and long continued practice have been made by the legislature of proceeding with respect thereto as has been made in the instant case. Such practice does evidence an interpretation by the legislature to the effect that it considered the procedure designated by it in the statutes to be proper compliance with the constitutional provisions relating to appropriations, whether such provisions were considered clear or doubtful. Even if doubtful, such interpretation by those administering it should be given great weight by the courts. *Daniel* v. *Simms,* 49 W. Va. 554, 39 S. E. 690; *State ex rel. Brandon* v. *Board of Control,* 84 W. Va. 417, 100 S. E. 215. We do not consider the doubt which respondent has suggested as to the sufficiency of the appropriation procedure as adequate to justify a decision overruling this legislative interpretation.

And in support of respondent's contention heretofore enumerated as point 7 of respondent's contention, namely, that the special account embracing this gift did not constitute funds from which the appropriation could be made, respondent refers to Code 25-1-8, heretofore quoted, to the effect that only the "profit" from the proceeds of the gift may be deposited for its use for the purpose for which the warrant here involved was drawn. It seems clear that the purpose of this statute in regard to profit is to make certain that, in addition to the corpus, the state receives any and all income or profit which may accrue or arise from any investment of the corpus of the gift, unless, of course, the terms of the gift or bequest expressly limited

such use. This conclusion is more reasonable, we think, than to consider the intent of that statute as imposing a limitation upon a gift which otherwise has no such limitation. To hold otherwise would, in most cases, substantially, if not wholly, defeat the purpose of the statute which was intended to permit the acceptance of and use of gifts for designated institutions.

For the reasons given, we are of the opinion to, and do so, hold that the writ of mandamus herein prayed for should be, and the same is hereby, awarded.

*Writ awarded.*