State *ex rel.* Kenneth W. Metz

*v.*

Robert D. Bailey, as Secretary of State of State of West Virginia

(No. 12707)

Submitted January 10, 1968.

Decided Prepared Order January 23, 1968.

(Opinion Filed February 6, 1968)

CALHOUN, JUDGE, dissenting.

*Martin & Seibert, Clarence E. Martin, Jr.,* for relator.

*C. Donald Robertson,* Attorney General, *Thomas B. Yost,* Assistant Attorney General, for respondent.

CAPLAN, JUDGE:

In this original proceeding in mandamus the relator, Kenneth W. Metz, seeks a writ to compel Honorable Robert D. Bailey, Secretary of State of the State of West Virginia, to accept and file the certificate of the relator as a candidate for the nomination to the office of judge of the thirty-first judicial circuit. A rule was granted by this Court returnable January 10, 1968, and the case was submitted for decision upon the petition, the answer filed by the respondent and upon the brief of the relator. No brief was filed by the respondent nor was there any oral argument made on behalf of either of the parties.

It is alleged in the petition that the relator, Kenneth W. Metz, advised the respondent that he intended, when permitted by statute, to file a certificate in the respondent's office as a Democratic candidate for the nomination to the office of judge of the thirty-first judicial circuit at the primary election to be held in May 1968. It is further alleged that the respondent, the Secretary of State, by letter dated September 11, 1967, advised the relator that he would not accept nor file a certificate from the relator or from

any other person who sought the nomination to the office of judge of the thirty-first judicial circuit at the primary election to be held in May 1968.

The reason assigned by the respondent for such refusal is reflected by the last paragraph of his letter, a copy of which is attached to the petition as "Exhibit B", which reads as follows:

"Please be advised that the Thirty-first Judicial Circuit was created by an Act of the 1967 Legislature and consists of the same counties as the Twenty-third Judicial Circuit, being Jefferson, Berkeley and Morgan. I, therefore, will not accept a certificate from you or anyone else seeking nomination to this Judgeship as the Act creating this Circuit is unconstitutional."

No reason is stated by the respondent in support of his contention that Chapter 40, Acts of the Legislature, Regular Session, 1967, (Code, 1931, 51-2-1, as amended) is unconstitutional other than that the same three counties, Berkeley, Jefferson and Morgan, also constitute the twenty-third judicial circuit.

The sole question to be answered in this proceeding is whether Chapter 40, Acts of the Legislature, Regular Session, 1967, is constitutional. The subject Act, where pertinent, now provides: "* * * the counties of Berkeley, Jefferson and Morgan shall constitute the twenty-third circuit; * * * and the counties of Berkeley, Jefferson and Morgan shall constitute the thirty-first circuit." Thus, it is readily discernible that the thirty-first circuit is superimposed upon the identical territory which constitutes the twenty-third circuit.

On January 23, 1968, this Court, by order, held that Chapter 40, Acts of the Legislature, Regular Session, 1967, is constitutional. This opinion is now filed for the purpose of stating the reasons for the decision embodied in the aforesaid order.

The circuit court is a constitutional court, as noted in Article VIII, Section 1 of the Constitution of West Virginia,

wherein it is provided that "The judicial power of the State shall be vested in a supreme court of appeals, in circuit courts and judges thereof, * * *." The first provision in that Article relating to circuit courts is Section 10. There it is provided that the state shall be divided into thirteen circuits. This section, however, has been amended many times and the number of circuits has been increased to the present number. The increase in the number of circuits is provided for in our Constitution, Article VIII, Section 14, wherein it is stated that the legislature may rearrange the circuits at any session, next preceding any general election of the judges of said circuits and that after 1888, may increase or diminish the number of circuits.

After providing that the first circuit shall have two judges, Article VIII, Section 10 provides: "* * * and for each of the other circuits one judge shall be elected by the voters thereof. * * *" Section 11 of the same article requires that a circuit court shall be held in every county in the State at least three times a year. An examination of the provisions of the Constitution relating to the judicial department of our government clearly reveals that, other than the first judicial circuit, all circuits may have only one judge. However, that solemn document nowhere inhibits the superimposition of one judicial circuit upon another.

It has been well established by the decisions of this Court that our Constitution is a restriction of power rather than a grant of power as is the Federal Constitution. Therefore, the Legislature may enact any measure which is not specifically prohibited by the State or Federal Constitution. *Robertson* v. *Hatcher*, 148 W. Va. 239, 135 S. E. 2d 675. In *Harbert* v. *County Court of Harrison County*, 129 W. Va. 54, 39 S. E. 2d 177, the Court said "* * * that the general powers of the Legislature are almost plenary and that it can legislate on every subject not interdicted by the Constitution itself. The test of legislative power in this State is constitutional restriction, and what the people have not said in the organic law their representatives shall not do, they may do." See *State ex rel. County Court of Marion*

*County* v. *Demus,* 148 W. Va. 398, 135 S. E. 2d 352; *State ex rel. Cashman* v. *Sims,* 130 W. Va. 430, 43 S. E. 2d 805; 4 M. J. Constitutional Law, Section 31 and cases cited in footnotes thereto.

In relation to the authority of the Legislature to act in certain areas, this Court, in *The State Road Commission* v. *The County Court of Kanawha County,* 112 W. Va. 98, 163 S. E. 815, said: "Whether the legislature has a certain power (not directly withdrawn) is not to be decided simply by marshalling the reasons for and against and then determining on which side is the weight of argument. The negation of the power must be manifest *beyond reasonable doubt.* See also *State ex rel. Appalachian Power Company* v. *Gainer,* 149 W. Va. 740, 143 S. E. 2d 351; *Farley* v. *State Road Commissioner,* 146 W. Va. 22, 119 S. E. 2d 833, which cases plainly hold that in considering constitutional restraint, the negation of power must appear beyond a reasonable doubt.

There is always a presumption in favor of the constitutionality of an act of the Legislature. Therefore, every reasonable construction must be resorted to by a court in order to sustain constitutionality and any doubt must be resolved in favor thereof. *State ex rel. Appalachian Power Company* v. *Gainer,* 149 W. Va. 740, 143 S. E. 2d 351; *State ex rel. Slatton* v. *Boles,* 147 W. Va. 674, 130 S. E. 2d 192; *Tweel* v. *West Virginia Racing Commission,* 138 W. Va. 531, 76 S. E. 2d 874.

In relation to the question presented in the instant case it may be asserted that certain problems could result from the superimposition of one circuit upon another. Statutes referring to circuit clerks and to the operation of the courts in the counties may present obstacles which may be worrisome. However, courts are not concerned with questions relating to the policy of a legislative enactment. Whether an act is wise or unwise is not for the consideration of a court. *The State Road Commission* v. *The County Court of Kanawha County,* 112 W. Va. 98, 163 S. E. 815; *State ex rel. Appalachian Power Company* v. *Gainer,* 149 W. Va.

740, 143 S. E. 2d 351. Our sole concern is the constitutionality of the legislative act.

Considering the principles herein related and noting that no inhibition exists in our Constitution which would preclude the enactment of Chapter 40, Acts of the Legislature, Regular Session, 1967, we are of the opinion that such act is constitutional. Therefore, the writ of mandamus as prayed for is awarded.

*Writ awarded.*

CALHOUN, JUDGE, dissenting:

Being of the opinion that the statute in question in this case is clearly unconstitutional, I respectfully dissent.

An unusual and unfortunate circumstance in this case is that, contrary to a uniform practice from which I have never heretofore noted a deviation, the attorney general's office made no appearance in behalf of the respondent, a duly elected state official, in this proceeding instituted to test the constitutionality of an act of the legislature. Counsel for the petitioner appeared personally before the Court on the date the case was set for argument but he waived his right to oral argument and submitted the case for decision on his written brief. The question presented for decision is one of extreme importance and of unusual magnitude and, therefore, I regret that the case was submitted without the benefit to the Court of the usual characteristics and advantages of an adversary legal proceeding.

I concur in the correctness of the principles stated in all points of the syllabus. It has been my lot to write some of the most recent opinions of this Court in which these principles have been reaffirmed, emphasized and applied. *State ex rel. Battle* v. *B. D. Bailey & Sons, Inc.,* 150 W. Va. 37, 146 S. E. 2d 686; *State ex rel. Appalachian Power Co.* v. *Gainer,* 149 W. Va. 740, 143 S. E. 2d 351; *Farley* v. *Graney,* 146 W. Va. 22, 119 S. E. 2d 833.

I believe, however, that in the body of the opinion in this case the Court incorrectly states a legal principle which is correctly stated in the first point of the syllabus

and in many prior opinions of this Court. The syllabus states that the legislature "may enact any measure not interdicted" by any constitutional provision. In the body of the opinion, the Court states, I believe incorrectly, that "the Legislature may enact any measure which is not *specifically prohibited* by the State or Federal Constitution." (Italics supplied.)

Perhaps the use of the italicized words marks the point of my disagreement and emphasizes that which I apprehend to be the basic fallacy and unsoundness of the majority opinion. Unfortunately, the words "specifically prohibited" appear, doubtless through inadvertence or oversight, in the body of the opinion in *Robertson v. Hatcher,* 148 W. Va. 239, 250, 135 S. E. 2d 675, 683.

In *State ex rel. County Court of Marion County* v. *Demus,* 148 W. Va. 398, 403, 135 S. E. 2d 352, 356, the Court recognized that the legislature's "powers are limited only by express restriction or restrictions necessarily implied therein by a provision or provisions of our constitution."

If everything in all our constitutions were "specifically" prohibited or "specifically" authorized, there would be little or no basis or reason for judicial construction of constitutional provisions; and countless volumes of judicial opinions and legal treatises would have remained unwritten. The reasoning of the Court seems to be predicated on the proposition that the Constitution contains no specific provision substantially as follows: "There may be no more than one circuit court in any single county." If I correctly comprehend the Court's reasoning, the decision is authority for the proposition that there is no constitutional inhibition against legislative provision for an additional appellate court with statewide jurisdiction; for any number of circuit courts within a single county, however large or small in population; and no constitutional inhibition against the creation of a circuit court for the City of Charleston or for any other municipality within the state, because legislative enactments of that character are not "specifically prohibited" by the Constitution.

Courts are not confronted with decisions of constitutional questions which are spelled out "specifically". It is well settled that if a constitutional provision is clear and specific, there is no basis for judicial construction. In such cases the courts simply declare that the language is clear and unambiguous and, in such circumstances, resort may not be had to any of the usual rules for construction of constitutional language. The majority opinion does not state whether the pertinent constitutional provisions are clear or whether they are ambiguous. As I understand the opinion, it neither states that the pertinent language is clear and unambiguous nor does it make reference to or application of any rules of construction.

Questions of constitutional construction, in the main, are governed by the same principles which control in ascertaining the meaning of language used in legislative enactments and in legal instruments. 16 Am. Jur. 2d, Constitutional Law, Section 59, page 231; 16 C.J.S., Constitutional Law, Section 15, page 71; *Diamond* v. *Parkersburg-Aetna Corp.*, 146 W. Va. 543, 553, 122 S. E. 2d 436, 442. The principles applied in construction of constitutional provisions are summarized in the first three points of the *Diamond* case as follows:

"1. 'In ascertaining the intention of the people in adopting a constitution all parts of the constitution must be considered, every article, section, clause, phrase and word allowed some effect, and all parts, clauses, phrases and words harmonized, if possible. No part or word in it can be ignored, disregarded, treated as meaningless or denied purpose and effect, unless there be irreconcilable contradiction and repugnancy.' Point 3, syllabus, *State* v. *Harden,* 62 W. Va. 313.

"2. An elementary rule of construction is that, if possible, effect should be given to every part and to every word of a constitutional provision and that, unless there is some clear reason to the contrary, no part of the fundamental law should be regarded as surplusage.

"3. The object of construction, as applied to a written constitution, is to give effect to the intent of the people in adopting it."

My view is that the pertinent provisions of the Constitution, as they relate to this case, may not be clear and unambiguous; but that, if not clear and unambiguous, when such provisions are considered in their entirety in the light of the usual rules of construction, the unconstitutionality of the statute in question is manifest.

If the Constitution were silent in relation to the creation of circuit courts, it might be said with reason that the purpose was to leave the legislature free to create such courts. The statute here in question does not merely "rearrange the circuits herein provided for," as authorized by Article VIII, Section 14. It does not create a court "of limited jurisdiction within any county," as authorized by Section 19. The legislature by this statute undertook to create circuit courts. It undertook to create two circuit courts (or one additional circuit court) in each of the three counties. While the legislature is authorized by the Constitution to create courts of limited jurisdiction, the Constitution itself created circuit courts.

The "Judicial Department" is created by Article VIII of the Constitution. References will be made hereafter in this opinion merely to the sections of that article and certain of the language quoted will be italicized for purpose of emphasis.

Section 1 is as follows: "The judicial power of the State shall be vested in a supreme court of appeals, in circuit courts and judges thereof, in such inferior tribunals as are herein authorized and in justices of the peace." The people thereby created this Court, circuit courts, justices of the peace and, as will be stated more fully hereinafter, authorized the legislature to create courts, but only courts of limited jurisdiction and only as authorized by Section 19.

Section 10 is, in part, as follows: "The State shall be divided into thirteen circuits. For the circuit hereinafter called the first, [Brooke, Hancock, Ohio and Marshall] *two judges shall be elected, and for each of the other circuits one judge shall be elected by the voters thereof.* * * * The business of the first circuit may be *apportioned between*

*the judges thereof, and such judges may hold courts in the same county or in different counties within the circuit at the same time or at different times as may be prescribed by law."*

If it was contemplated that the legislature was authorized subsequently to create two or more circuit courts within a single county, why did not the framers of the Constitution simply provide that the four counties in question should constitute two separate circuits, with the result that each of the four counties would have two circuit courts? If it was contemplated that any other circuit (whether embracing a single county or more than one county) was authorized by subsequent legislative enactment to have two or more circuit court judges, why was there a provision for the apportionment of work between the judges only for the first circuit? On the subject of specific language, we restate the following provision which was previously quoted: "and *for each of the other circuits one judge shall be elected* by the voters thereof."

Though such language seems redundant or superfluous following the specific provisions for two judges in the first circuit, how could language be more specific, definite and unambiguous than the statement that for each of the other circuits "one judge shall be elected by the voters thereof"? If it was contemplated that there could be two circuit courts for a single county, or two judges for any circuit other than the first circuit, how are we to explain the concluding sentence of Section 10? It is as follows: "The business of the first circuit may be apportioned between the judges thereof, and such judges may hold courts in the same county or in different counties within the circuit at the same time or at different times *as may be prescribed by law."* Such provision applies only to the first circuit and such "as may be prescribed by law" only as to the first circuit.

It is well settled that the general rule of construction that the express mention of one thing implies the exclusion of matters not mentioned is applicable in the construction of constitutional provisions. *State ex rel. Trent* v. *Sims,* 138 W. Va. 244, 273, 77 S. E. 2d 122, 139; *Harbert* v. *County*

*Court of Harrison County,* 129 W. Va. 54, 64, 39 S. E. 2d 177, 186; 16 C.J.S., Constitutional Law, Section 21, page 89. This rule of construction applies with peculiar force to Section 10 wherein it is provided that two judges shall be elected for the first circuit; that each of the other circuits shall elect one judge; that the "business of the first circuit may be apportioned between the judges thereof, and such judges may hold courts in the same county or in different counties within the circuit at the same time or at different times as may be prescribed by law."

Section 11, dealing with Terms of Court, is, in part, as follows: "A circuit court *shall be held in every county* in the State at least three times in each year, and provisions may be made by law for holding special terms of *said court."*

Section 12, dealing with Circuit Court Jurisdiction, is, in part, as follows: *"The* circuit court shall have the supervision and control of all proceedings before justices and other inferior tribunals, by mandamus, prohibition and certiorari. * * * They shall have appellate jurisdiction in all cases, civil and criminal, where an appeal, writ of error or supersedeas may be allowed to the judgment or proceedings of any inferior tribunal."

Unlike any other counties now or throughout the prior history of this state, Berkeley, Jefferson and Morgan Counties now have two courts of concurrent and general jurisdiction; and also two intermediate appellate courts. Being of equal status, there can be no appeal from one to the other. Any litigant in any one of these three counties, in any civil case cognizable in law or equity, may elect in which of the two circuit courts of the county he will seek redress. If he seeks an appeal from the judgment of any "inferior tribunal", he may, at his election, determine to which court of intermediate appellate jurisdiction he will apply.

Section 14, dealing with Rearrangement of Circuits as initially provided in accordance with Section 13, provides, in part: "The legislature may *rearrange* the circuits herein

provided for * * * and * * * increase or diminish the number thereof." This language, for more than a century, has been applied according to its clear meaning so that the circuits have been vastly rearranged and the number increased from thirteen, as originally provided, to thirty-one, as provided by the statute here in question. The "circuits herein provided for", as that language is used in Section 14, refers to Section 13 by which provision was made for thirteen circuits *but only one circuit court within a single county*. Thus the circuit courts were "provided for" in the Constitution.

Section 16 provides for salaries of judges of this Court and then provides, in part: "and that of a judge of *the* circuit court shall be * * *."

Section 18, dealing with Clerks of Circuit Courts, provides, in part: "The voters *of each county* shall elect *a clerk* of *the* circuit court, * * *; and when a vacancy shall occur in the office, *the* circuit court or the judge thereof in vacation shall fill the same by appointment * * *." May each of the three counties in question now elect a clerk for each of its two circuit courts? Does the clerk of the present circuit court ipso facto become the clerk of the newly-created circuit court? Do the two circuit courts or judges thereof in vacation *jointly* share the power to appoint "a clerk" in case of a vacancy in that office?

Section 19, relating to Courts of Limited Jurisdiction, the only provision in the Constitution expressly authorizing the legislature to create trial courts of record is, in part, as follows: "The legislature may establish *courts of limited jurisdiction* within any county, incorporated city, town or village, with the right of appeal to *the* circuit court * * *."

Circuit courts, of course, are courts of general jurisdiction, created by the Constitution. The legislature is given power to create only courts of "limited jurisdiction", from which appeals may be taken to the circuit courts, the courts of general jurisdiction, the constitutional courts. A rule of construction previously referred to is peculiarly applicable at this point. That is, the express provision in Section 19

for power in the legislature to create courts of "limited jurisdiction" necessarily excludes power in the legislature to create courts of general jurisdiction. In pointing out this distinction between constitutional courts and courts of limited jurisdiction created by the legislature, the Court in *Harbert* v. *County Court of Harrison County,* 129 W. Va. 54, 57, 39 S. E. 2d 177, 182, after referring to pertinent provisions of the Constitution, stated: "By * * * that fundamental instrument the Supreme Court of Appeals, the Circuit Courts and their judges, and justices of the peace, being created and provided for by the Constitution itself, are given the status of constitutional tribunals."

Section 25, dealing with Removal of Causes, provides that certain actions, suits or proceedings previously pending in a county court "shall be transmitted to and filed with *the* clerk of *the circuit court* of the county, * * *."

A practical construction of doubtful or unclear constitutional language acquiesced in for many years, or a long-continued construction placed thereon by governmental representatives, particularly by the legislature, will be accorded peculiar weight by the courts. 16 Am. Jur. 2d, Constitutional Law, Sections 83-86, inclusive; 16 C.J.S., Constitutional Law, Sections 32-34, inclusive. "Long continued legislative construction of a constitutional provision is strongly persuasive that such construction is correct." *Simms* v. *County Court of Kanawha County,* 134 W. Va. 867, pt. 2 syl., 61 S. E. 2d 849. To the same general effect, see *State ex rel. West Virginia Board of Education* v. *Sims,* 143 W. Va. 269, 279, 101 S. E. 2d 190, 196; *Charleston Transit Co.* v. *Condry,* 140 W. Va. 651, 658, 86 S. E. 2d 391, 396; *State ex rel. Thompson* v. *Morton,* 140 W. Va. 207, 222, 84 S. E. 2d 791, 800; *Norfolk and Western Railway Co.* v. *The Board of Public Works,* 124 W. Va. 562, 569, 21 S. E. 2d 143, 147; *State Road Commission* v. *Kanawha County Court,* 112 W. Va. 98, pt. 6 syl., 163 S. E. 815; *State ex rel. Hallanan* v. *Rocke,* 91 W. Va. 423, pt. 3 syl., 113 S. E. 647; *State* v. *Kittle,* 87 W. Va. 526, 532, pt. 1 syl., 105 S. E. 775, 777; *State ex rel. Brandon* v. *Board of Control,* 84 W. Va. 417, pt. 2 syl., 100 S. E. 215; *State* v. *Harden,* 62 W. Va. 313, pt. 5 syl., 58 S. E. 715.

Code, 1931, 58-3-1, provides for appeal "to the circuit court of the county" from the county court. Code, 1931, 58-4-1, provides that an appeal from a court of limited jurisdiction may be awarded to the "circuit court of the county." Code, 1931, 7-7-3, as amended, provides for the annual compensation of "the clerk of the circuit court * * * in each county." Code, 1931, 3-10-6, as amended, provides that "When a vacancy occurs in the office of the clerk of the circuit court, the circuit court, or the judge thereof in vacation, shall fill the same by appointment." Code, 1931, 51-2-4, provides that "the judge of the circuit court may, by a warrant directed to the clerk" call a special term of such court. Code, 1931, 52-1-3, as amended, provides for appointment of "two jury commissioners of the circuit court of each county. * * * They shall be appointed by the circuit court, or the judge thereof in vacation, of their respective counties." Will there be four jury commissioners and two annual petit jury and grand jury lists for each of the three counties in question?

. Code, 1931, 51-7-1, provides for appointment of court reporters by the "circuit courts of the several judicial circuits * * *, or the judges thereof in vacation." Code, 1931, 51-7-3, provides for compensation to be paid to the court reporter from the treasury of the county or treasuries of the counties of the circuit and that such compensation shall be "such salary or other compensation as the court or judge may allow." Will there be two court reporters to be paid from the treasuries of the three several counties? I know of no statute which provides that two circuits may jointly employ a court reporter, nor do I know of any statutory authority for appointment or payment of such a court reporter. Code, 1931, 51-3-4, as amended, provides that "the law proceedings of every court shall be entered in a book,". Will there be two sets of circuit court record books for each of the three counties? I am not aware of any statutory authority for records of two circuit courts to be entered in the same book.

Code, 1931, 51-3-5, provides that "every circuit court * * * shall be attended by the sheriff of the county in

which it is held, who shall act as the officer thereof." I am not aware of any statute authorizing or requiring the same sheriff to attend and act as the officer of two or more circuit courts. Code, 1931, 51-5-1, provides for the appointment by each circuit court of commissioners in chancery, the number depending on the population of the county. Will each of these three counties have or be entitled to have twice the number of commissioners in chancery as are authorized in other counties having similar populations? Will there be two general receivers in each of the three counties, under Code, 1931, 51-6-1?

Code, 6-7-4, as amended, provides for salaries of judges of the circuit courts, payable out of the state treasury, the amount of which depends upon the population of the circuit. If statutes such as that here in question are upheld, will the state be required to pay twice the usual salary for a circuit of a certain aggregate population merely because the legislature sees fit to create two judicial circuits and two circuit court judgeships for the county or counties in question?

The 1967 statute here in question so amends Article 2 of Chapter 51, Code, 1931, as previously amended, that there will be six regular circuit court terms in each of these three counties. These three counties are unique also in the light of the fact that in every other county in the state in which there exists a trial court of record in addition to the circuit court, the additional court is a court of limited jurisdiction supported by the county in which it is located. To illustrate, the State of West Virginia, under this statute, must pay salaries of two circuit court judges for Morgan County but the salary of only one circuit court judge for Kanawha County and all the other more populous counties of the state.

In my opinion, throughout the period of the state's existence, the legislature has, by numerous enactments and reenactment of statutes, clearly and unmistakably construed the Constitution in a manner wholly at variance with the 1967 statute involved in this case. Throughout that period of time, that clear construction has been

accepted and acquiesced in by the people, by the three branches of government and by all the representatives of the people in all departments of the state government.

For reasons stated, I would have denied the writ of mandamus which was awarded in this case.